**Joe HAYES, Ramona Barnes, Mitch Abood, Al Adams, Charles Bussell and Terry Martin, Appellants,**

v.

**M.R. CHARNEY, Executive Director of the Legislative Council, Hugh Malone, Chairman of the Legislative Council, Bill Mullin, Director of Finance of the State of Alaska, Department of Administration, Lisa Rudd, Commissioner of the State of Alaska, Department of Administration, and Roark-Harmon Associates, Appellees.**

**Bill MULLIN, Lisa Rudd, Cross-Appellants,**

v.

**Joe HAYES, Ramona Barnes, Mitch Abood, Al Adams, Charles Bussell and Terry Martin, Cross-Appellees.**

Nos. 7859, 7860.

Supreme Court of Alaska.

Jan. 4, 1985.

---

James T. Robinson, David A. Devine, Smith, Robinson & Gruening, Anchorage, for appellants.

James B. Bradley, Pamela Finley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee Charney.

Jonathan B. Rubini, Asst. Atty. Gen., Juneau, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellees/cross-appellants Rudd and Mullin.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

This dispute arose out of the award of a contract by the Legislative Council for television coverage of the activities of the Thir-

teenth Alaska Legislature.[1] Television coverage of the first ninety days of past sessions had been funded from the budgets of the Department of Education or the Alaska Educational Broadcasting Commission. Coverage that continued past the first ninety days of a session had been funded from supplemental appropriations to the Legislative Affairs Agency, through which the Legislative Council acts. In 1983, for the first time in five years, there was no specific appropriation for television coverage.

At a Legislative Council meeting on November 16, 1982, Senator Kelly noted that no plans for television coverage had been made, whereupon the Council decided to solicit proposals. On December 8, the Council referred the proposals it had received to a committee for review; at a meeting held on January 4, 1983, thirteen days before the full legislature was scheduled to convene, it decided to award the contract for the filming of the 1983 legislative session to Roark-Harmon Associates.

On January 12, 1983, Representatives Joe Hayes, Ramona Barnes, Mitch Abood, Al Adams, Charles Bussell and Terry Martin (hereinafter collectively referred to as "the Legislators")[2] filed a complaint in the superior court against defendants Charney, Malone, Mullin, and Rudd (hereinafter collectively referred to as "the State"),[3] and Roark-Harmon Associates, requesting the court to enjoin performance of the contract with Roark-Harmon. In support of their complaint, the Legislators alleged, among other things, that all actions taken at the Council's January 4, 1983, meeting were void, as the Council had not complied with the "reasonable notice" requirements of Alaska's Open Meetings Act.[4] They also argued that the Council did not possess the constitutional or statutory authority to award a contract for television coverage. More particularly, the Legislators alleged that the legislature had intentionally not appropriated any funds for television coverage, and that to provide for such coverage, the Council used monies appropriated for other purposes. In doing so, the Legislators claimed, the Council usurped legislative authority and power in violation of article II, section 1, of the Alaska Constitution.[5] The State argued that the legisla-

---

1. The Legislative Council is a permanent interim committee and service agency of the Alaska Legislature. AS 24.20.010. Its existence is mandated by article II, section 11, of the Alaska Constitution. It is composed of the president of the senate and six senators appointed by him, and the speaker of the house and six representatives appointed by him. AS 24.20.020. The Council provides "full-time technical assistance in accomplishing the research, reporting ... and general administrative services essential to the development of sound legislation in the public interest." AS 24.20.010. For this purpose, the legislature granted the Council broad powers. AS 24.20.060.

2. The appellants, "Legislators," are six members of the Alaska House of Representatives including Speaker Hayes and Majority Leader Barnes.

3. The appellees, the "State," are comprised of M.R. Charney, Executive Director of the Legislative Council; Representative Hugh Malone, Chairman of the Legislative Council; Bill Mullin, Director of Finance of the State of Alaska, Department of Administration; and Lisa Rudd, Commissioner of the State of Alaska, Department of Administration.

4. AS 44.62.310 provides in pertinent part:

(a) All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including ... councils, ... divisions, bureaus, commissions ..., advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section. Except when voice votes are authorized, the vote shall be conducted in such a manner that the public may know the vote of each person entitled to vote....

(b) If excepted subjects are to be discussed at a meeting, the meeting must first be convened as a public meeting and ...

....

(e) Reasonable public notice shall be given for all meetings required to be open under this section.

(f) Action taken contrary to this section is void.

5. Alaska Const. art. II, § 1 provides: "The legislative power of the State is vested in a legislature consisting of a senate with a membership

ture had never prohibited funding for private television coverage of the session, and that a mere omission of a specific allocation was not an indicator of legislative intent.

The superior court denied the Legislator's request for injunctive relief and dismissed the case, finding that it involved no justiciable questions [6] and that, even if the questions presented were justiciable, the equities of the case did not favor granting the relief requested.

The equitable considerations which the superior court found compelling included the Legislators' three month delay in filing suit, the existence of alternative non-judicial remedies,[7] the public interest in avoiding "contracting by injunction," and deference to a coordinate branch of government.

▮▮▮ The two issues appellants seek to present to this court are: 1) whether the Legislative Council violated the Alaska Open Meetings Act by not giving reasonable notice and 2) whether the Legislative Council unconstitutionally usurped the power of the legislature to appropriate public funds. We do not reach the merits of these claims, however, because we refrain from deciding questions "where the facts have rendered the legal issues moot." *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971). In this case, the 1983 legislative session is over, and the contract in question has been fully performed by both parties. A judgment by this court would be advisory only.

The Legislators would have us invoke the public interest exception to the mootness doctrine: "[W]here the matter is one of grave public concern and is recurrent but is capable of evading review, we have undertaken review even though the question may be technically moot." *Id.*

▮▮▮ The public interest exception involves the consideration of three main factors: 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine. *E.g., Etheredge v. Bradley*, 502 P.2d 146, 153 (Alaska 1972); *Johansen v. State*, 491 P.2d 759, 762 (Alaska 1971). These factors are not strictly determinative in and of themselves. Each is merely one aspect of the question of whether the public interest dictates review by this court. Ultimately, the determination whether to review a moot question is left to the discretion of the court. *Witt v. Watkins*, 579 P.2d 1065, 1071 n. 19 (Alaska 1978); *Etheredge v. Bradley*, 502 P.2d at 153; *R.L.R. v. State*, 487 P.2d 27, 45 (Alaska 1971). In this case, we hold that neither the "reasonable notice" issue nor the "usurpation of power" issue present matters of such public import as to justify invoking an exception to the mootness doctrine.

First, we examine the public importance of the issue concerning the Council's alleged violation of the notice provisions of the Open Meetings Act.

▮▮▮ The Legislators do not allege that the Council meeting of January 4, 1984, was actually closed to the public. However, they do contend that the Council's failure to follow a standardized notification procedure violated the Open Meetings Act and deprived the public of its right to participate in law making,[8] arguing that the notice given was not "reasonable", effectively closing the meeting to the public.[9]

of twenty and a house of representatives with a membership of forty."

6. The trial court suggests that the controversy may not be justiciable because it involves a political question.

7. The Legislature and Legislative Council, under Clause X of the Roark-Harmon contract, had the power to terminate it. The legislature also has the authority to influence the actions of the Council itself through legislation.

8. The Alaska Open Meetings Act was enacted to provide the citizens with an opportunity to attend and participate in all agency meetings. This opportunity is fostered specifically by the requirement that reasonable public notice be given to the public. AS 44.62.310(e).

9. This notice consisted primarily of solicitation of bids in the newspapers, with limited press coverage in Juneau and possibly elsewhere in the state.

Thus, they urge this court to impose a definition of reasonableness, in terms of timeliness and subject matter, in order to avoid future "closed" council meetings.[10]

■ Judicial review on this issue would do little to further the public interest. Article II, section 12 of the Alaska Constitution gives the legislature the power and duty to establish its own rules,[11] and the Legislative Council is subject to the sole direction and control of the legislature. If the legislature wishes to change the notice procedures for Legislative Council meetings, it need only impose the notice requirements it deems fit.

Second, the Legislators contend that the Legislative Council unconstitutionally usurped the power of the legislature to appropriate public funds.

■ The Legislators argue that there is a legitimate public interest in determining the constitutionality of the Council's action under article IX, section 13 of the Alaska Constitution, which states that "[n]o money shall be withdrawn from the [state] treasury except in accordance with appropriations made by law." The question is, therefore, whether this dispute between the legislature and the Legislative Council is of such significant public interest as to warrant our review despite its mootness. We conclude that it is not, because the legislature has the constitutional power to prohibit such actions.[12]

The appeal is dismissed as moot. SO ORDERED.

RABINOWITZ, Justice, with whom COMPTON, Justice, joins, dissenting.

I dissent from the court's refusal to reach the merits of appellant's claim that the Legislative Council violated the Open Meetings Act by failing to provide reasonable notice for a January 1983 meeting at which the council awarded a contract to film the 1983 legislative session. In my view the public interest exception to the mootness doctrine is applicable here for the following reasons.

Accepting the court's position that the public interest exception involves three main factors I first address the question of whether the issue is so important to the public interest as to justify overriding the mootness doctrine. In *Alaska Community ty Colleges' Federation of Teachers, Local 2404 v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984) we noted that AS 44.62.-312 made it clear that section 312 of the OMA exists primarily to advance the interests of the people of Alaska. There we further observed that when the OMA is breached it is the "people's right to be informed" which sustains injury.[1]

---

10. In *Alaska Community Colleges' Federation of Teachers, Local No. 2404 v. University of Alaska*, 677 P.2d 886 (Alaska 1984) (hereafter referred to as *ACCFT*), we noted that application of the mootness doctrine was inappropriate in an Open Meetings Act case. At issue was whether a subsequent meeting ordered as a corrective measure by the superior court validated a closed meeting that allegedly violated the Open Meetings Act, thus rendering the question of violation moot.

Despite the general rule announced in that case, we apply the mootness doctrine here because the legislature, to which the plaintiffs belong, had direct authority to cure the violation that is alleged, and to prevent any further violations. *See infra* text p. 835.

11. Alaska Const. art. II, § 12 provides in part, "the houses of each legislature shall adopt uniform rules of procedure."

12. *See* Alaska Const. art. II, § 11. The legislature has recently demonstrated its ability and

authority to control the Legislative Council by specifically precluding the use of funds for television after the 90th day of the session of the 13th Legislature. Ch. 12, § 1, SLA 1983; ch. 17, § 1, SLA 1983.

In addition, the legislature had a means available to cancel the contract in question before it was ever performed. Clause X of the contract specifically provided that the contract was terminable at will. Accordingly, Representative Martin filed a resolution for the termination of the contract. HR3 was introduced on January 17, 1983, but the resolution was held up in committee when the members decided to resolve the dispute through court action.

1. Elaborating on this theme we further said:

Open decision-making is regarded as an essential aspect of the democratic process. It is believed that public exposure deters official misconduct, makes government more responsive to its constituency, allows for greater

Given the foregoing purposes of Alaska's Open Meeting Act, I am of the view that invocation of a mootness bar is particularly inapplicable in this case. Public disclosure of the nature and circumstances of an OMA violation is an important component of the remedy available under the Act.[2] In part, the philosophy underlying Alaska's OMA is that publicity regarding malfunctioning of government will have a salutary effect upon the behavior of government officials, making them more responsive to public concerns. It follows that the public has an interest in knowing whether the council failed to provide adequate notice of its January 4, 1983, meeting. In turn this court, in this appeal, should determine whether the notice given by the council was in fact reasonable under the OMA.[3]

public provision of information to the decision-maker, creates greater public acceptance of government action, and promotes accurate reporting of governmental processes.
*Alaska Community Colleges' Federation of Teachers, Local 2404 v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984).

**2.** *Id.* at 677 P.2d at 889.
AS 44.62.312(5) provides that "the people's right to remain informed shall be protected."

**3.** I think it is clear that the issue in this case is capable of repetition and that application of a mootness bar will frustrate review of an important question under Alaska's Open Meeting Act. See *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971) ("[W]here the matter is one of grave public concern and is recurrent but is capable of evading review, we have undertaken review even though the question may be technically moot.")