**CITY OF CORDOVA, Alaska, a Municipal Corporation, and Petersburg General Hospital, Appellants,**

**v.**

**MEDICAID RATE COMMISSION, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, STATE OF ALASKA, Appellee.**

No. S–3030.

Supreme Court of Alaska.

March 30, 1990.

---

Stephen D. Rose, Inslee, Best, Doezie & Ryder, P.S., Bellevue, Wash., Scott A. Sterling, Jensen, Harris, & Roth, Anchorage, for appellants.

Lawrence C. Delay, Asst. Atty. Gen., Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION.

This appeal involves attempts by the Medicaid Rate Commission ("the Commission") to recover $167,361.00 paid by the State to the City of Cordova, owner and operator of the Cordova Community Hospital ("Cordova"), and $26,036.56 paid to the Petersburg General Hospital ("Petersburg") for Medicaid services provided by the two hospitals during 1984–85.

## II. FACTS AND PROCEEDINGS.

In 1983, the legislature adopted a prospective payment system for Medicaid.[1] Under the old, retrospective system, health care facilities were reimbursed by Medicaid based on the "reasonable costs" incurred by the facility for patient care. Under the new, prospective system, facilities are reimbursed by Medicaid at rates determined by the Commission in advance of the provision of services by the facilities. See AS 47.07.-070(a). The prospective system provides an incentive for facilities to minimize their costs because a facility providing a service at a cost less than the pre-determined rate is permitted to keep the difference ("earns a profit"), while a facility providing the service at a cost greater than the pre-determined amount suffers a loss in the amount of the difference.

The hospitals submitted budgets and requests for prospective payment rates for their fiscal year (FY) 1985, ending June 30, 1985. These budget requests were reviewed by one of the Commission's program budget analysts. A staff analysis for each of the two hospitals was performed and the budget analyst recommended prospective payment rates for each. The Commission thereafter adopted prospective payment rates for the two hospitals, and paid them for Medicaid services based on these rates.

In the summer of 1986, the Commission began to audit the budget forms and rate requests submitted by health care facilities, including those submitted by Cordova and Petersburg for FY85. Cordova's field audit was conducted in January of 1987. The final audit report was completed in November of 1987. At its December 11, 1987, meeting, the Commission (whose members at this meeting included Mr. Randy Super, designated as a member of the Commission by the Department of Health and Social Services (DHSS) Commissioner Myra Munson) voted to accept the audit, which revealed that Cordova had been overpaid $167,361.[2]

Petersburg's FY85 audit began in October of 1986. This audit determined that Petersburg had been overpaid $26,036.56. At an informal hearing held on September 18, 1987, the Commission accepted the audit report and sought to recover the overpayment from Petersburg. Under protest, Petersburg paid the alleged $26,036.56 overpayment and filed a request for an administrative hearing.

Cordova filed suit in Anchorage superior court, and the superior court granted Cordova a temporary restraining order preventing the DHSS from recouping the overpayment from current claims payments. Petersburg then filed a motion to intervene as a party plaintiff. The motion was granted. The hospitals thereafter filed a motion for summary judgment and for a permanent injunction. The State filed an opposition to the motion. Among the State's attachments to its opposition were affidavits signed by Millie Duxbury, Mary Bensen, and Sister Barbara Haase. The hospitals subsequently filed a motion to strike these affidavits on the ground that they failed to comply with the requirements of Civil Rule 56(e).

After hearing the parties' arguments on the hospitals' motion for summary judgment, the superior court rendered an oral

1. Ch. 95, SLA 1983.

2. Although representatives of Cordova were present at the hearing, they were apparently not permitted to present evidence or argument. On December 16, DHSS notified Cordova that it could pay the $167,361 in one lump sum within 30 days, or alternatively DHSS would recoup the overpayment from current claims payments to Cordova.

decision. The court first held that retroactive recoupment of overpayments was not available to the Commission because the relevant statute, AS 47.07.070(a), permits only prospective action. Second, although the Commission presently has authority under 7 AAC 43.693(d) (eff. 8/9/86, Reg. 99) to recoup overpayments, it did not have that authority under the applicable audit regulation, 7 AAC 43.700. Third, in a decision going to the heart of the present appeal, the superior court held:

> Until 7 AAC 43.693(d) was promulgated, the Commission did not have any authority to act retrospectively, so if the Commission cannot go back into 1985 and reset the rates, what is its remedy? If the audit reveals error in the budget analysis or misrepresentation, these errors should be corrected by adjusting rates for the ensuing year or years. If the hospital has made a profit on Medicaid payments, then payments exceeded the reasonable costs incurred. If this profit were the result of some miscalculation or misrepresentation, it can be taken into account in subsequent years when the budget analys[t]s are calculating reasonable costs for the upcoming fiscal year. In adjusting the rates for the new year to account for errors made on Medicaid payments from previous years, the Commission is able to

recover costs which were paid out in error without acting outside the scope of its authority. Therefore if there were miscalculations or misrepresentations the Commission's remedy is to make prospective adjustments to account for such errors.

The superior court also held that the DHSS Commissioner's designation of Randy Super did not constitute an impropriety that would void the December 11, 1987, hearing; the court concluded that this delegation of the Commissioner's responsibilities to Mr. Super was authorized by AS 44.17.010.

The hospitals then filed a motion requesting that the superior court clarify its oral ruling. The hospitals also filed a motion for actual attorney's fees and costs which was countered by the State's motion for Rule 82 attorney's fees and a motion to remand the case to the Commission.

The superior court denied the hospitals' motion for clarification and entered an order denying attorney's fees and costs to either party.[3] This appeal followed.

## III. DISCUSSION.

 The superior court's decision to grant the State relief prospectively turns on its interpretation of AS 47.07.070.[4] That statute provides:

---

3. This order stated:
 > Both parties have filed a motion seeking to be declared the prevailing party. In addition, the plaintiffs seek to be declared public interest litigants. All motions are denied. The plaintiffs prevailed [o]n the issue of whether the state could retroactively recoup overpayments prior to the adoption of 7 AAC 43.693. The defendants prevailed on the issues of whether the state could audit the plaintiff's FY 1985 year prior to adoption of .693; whether the designee of the commissioner could attend the meetings and vote. Therefore, it is the conclusion of this court that neither party is the "prevailing party" for the purposes of awarding attorney fees.
 > Further, plaintiffs contend that they are public interest litigants. The plaintiffs fail to meet the test of being litigants which would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance. These plaintiffs do have the economic incentive to file the lawsuit as they readily did. Further, the issues raised are of importance not to the general hospital

population in Alaska, but only to these hospitals experiencing a claim for recoupment of past overpayments prior to § .693 being adopted. Therefore, it is this court's conclusion that plaintiffs are not public interest litigants.

4. The superior court first determined that the right to retroactive recoupment is not inherent in the right to audit embodied in 7 AAC 43.700. During FY85, the following two versions of 7 AAC 43.700 were in effect:
 > *7 AAC 43.700. AUDIT AND INSTITUTIONAL REVIEW.* (a) As a condition of participation in the medicaid program, providers under secs. 675–700 of this chapter must provide reasonable access to fiscal and patient care records for all medicaid beneficiaries.
 > (b) Providers must allow inspection of records by authorized officials of both state and federal agencies connected with the medicaid program.
 > (c) Providers with facilities in Alaska must make available for inspection their fiscal and patient records either at their facility within

(a) The commission shall determine prospectively the rate of payment to a health facility under this chapter and AS 47.25.120–47.25.300 based on a fair rate for reasonable costs incurred by the facility. The commission shall by regulation list the factors it considers in making its rate determinations under this section.

(b) In determining a rate of payment to a health facility under this section, the commission shall consider the proportionate share of the facility's financial requirements for patient care for

(1) costs of current operations, including salaries and wages, purchased services, supplies, insurance, leases, depreciation, taxes, interest expense, maintenance and other health facility operating expenses; and

(2) education, research, and appropriate capital development.

We reject the superior court's interpretation of AS 47.07.070. Although AS 47.07.-070 authorizes the Commission prospectively to determine the rate of payment to be made to a health care facility, the statute is silent on the subject of prospective recoupment from a health care facility based on audit results. AS 47.07.070 cannot fairly be read as implicitly authorizing the Commission to consider audit results in its determination of prospective payment rates for the current fiscal year. *Cf. Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (interpreting Medicare Act provision expressly providing for retroactive corrective adjustments, and holding that retroactive cost-limit rules were not authorized by the

the state of Alaska or at a business office located within the state of Alaska. (eff. 8/18/79, Reg. 71)

*7 AAC 43.700. HEALTH FACILITY AUDITS.* (a) The commission will, in its discretion, inspect the financial records of a health facility receiving payments from the department. The commission will inspect financial records during normal business hours and will notify a facility of a proposed inspection of its records at least 10 working days before the inspection.

(b) If the commission directs, a health facility receiving payments from the department for eligible state program recipients must produce its financial records for inspection by the commission at a location within the State of Alaska or at another place agreed upon by the commission and the health facility.

(c) At the request of the commission, a health facility must send copies of financial records to the commission offices within 10 working days after the request. (eff. 10/21/84, Reg. 92, repealed 8/9/86)

In 1986, the Commission adopted a new audit regulation:

*7 AAC 43.693. FACILITY AUDITS.* (a) The commission will inspect the financial records of a facility receiving payments from the division of medical assistance. The commission will inspect financial records during normal business hours and will notify a facility of a proposed inspection of its records at least 10 working days before the inspection.

(b) If the commission directs, a facility receiving payments from the division of medical assistance for eligible state program recipients shall produce its financial records for inspection by the commission at a location within the state or at another place agreed upon by the commission and the facility.

(c) At the request of the commission, a facility shall send copies of financial records to the commission office within 10 working days after the request is received.

(d) The commission will review the findings of facility audits. Audit findings that determine that the division of medical assistance has overpaid or underpaid will be acted upon in the following manner:

(1) If the audit findings relate to a facility's fiscal year already ended, the division of medical assistance will be notified of amounts due from or to the facility.

(2) If the audit findings relate to a facility's fiscal year in progress, the approved rate will be adjusted to reflect a correct payment rate. The level of adjustment will be prorated to ensure that the division of medical assistance will recoup all money by the end of the facility's fiscal year or that the facility will receive all money due it, as appropriate. (eff. 8/9/86, Reg. 99)

We agree with the superior court that under AS 44.62.240 ("Silence or failure to follow any course of conduct is considered earlier inconsistent conduct"), the recoupment provision of 7 AAC 43.693(d) is inconsistent with 7 AAC 43.700 because 7 AAC 43.700 is silent as to recoupment. We also agree that "the agency's failure to conduct any audit in the time between the passage of the prospective payment system and the promulgation of 7 AAC 43.693(d)" is an indication of inconsistency, and that the promulgation of 7 AAC 43.693(d) vitiates the State's argument that the authority to recoup is implied in the authority to audit found in 7 AAC 43.700. In brief, we affirm the superior court's holding that ".700 did not provide for recoupment."

provision, which permitted retroactive case-by-case adjudication, not retrospective rule-making).

■ 7 AAC 43.693(d) is the only regulation which authorizes the Commission to undertake corrective action based upon an audit.[5] As noted previously, however, that statute is inapplicable to the issues in this appeal since it became effective after the fiscal year in question.[6]

■ We also reject appellees' argument that AS 47.07.074 provides authority for recoupment.[7] It is clear that the text of the statute does not state or imply that the amount of the payment will be affected by any audit.

In concluding that the superior court erred, we observe, as we did in *Lake Otis Clinic v. State*, 650 P.2d 388, 394 (Alaska 1982):

We would have no hesitation in ordering a refund of money which had been awarded based on false representations. Likewise, if the grant had been expended for an illegal purpose, a refund would be appropriate. However, those situations do not exist here.

We also noted that in the grant context:

The source of both liability and remedy must emanate explicitly or implicitly from the grant statutes, regulations duly enacted and consistent with the statute, or provisions in the grant agreement.... If the grantor, however, has failed to establish such a right of recapture through provisions in the grant agree-

ment or duly promulgated regulations, it may well have forfeited its ability to impose the sanction in the absence of explicit statutory authority. Because of such failure, no legal basis would exist for the sanction; it would also be unfair to grantees to subject them to unannounced and improvised detriments.

*Id.* at 388 (quoting R. Capalli, *Rights and Remedies Under Federal Grants*, at 98–99 (1979)).

## IV. WAS RANDY SUPER A "DESIGNATED APPOINTEE"?

■ The superior court held that the Commissioner's designation of Randy Super did not constitute an impropriety sufficient to void the December 11, 1987, hearing, concluding instead that this delegation of authority by the commissioner to Mr. Super was authorized by AS 44.17.010. The State argues that this issue is moot because the Commission decided not to act on its December 11, 1987, decision and reheard Cordova's audit review on December 10, 1988, with a panel of members appointed by the governor.

As a general rule, we "refrain from deciding questions 'where the facts have rendered the legal issues moot.'" *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985) (quoting *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971)). However, mootness doctrine is a product of judicial policy, not constitutional mandate,[8] and we have recognized on numerous occasions that certain

5. Nor is authorization for recoupment found in either 7 AAC 43.685 or 7 AAC 43.686. Neither of these regulations explicitly references audit results as a permissible factor to be considered by the Commission in determining the rate of payment to be made to a health care facility.

6. Appellees do not contest the inapplicability of 7 AAC 43.693(d) to Cordova and Petersburg for fiscal year 1985.

Appellees argue that the superior court's ruling can be sustained on the alternative theory that they are entitled to assert a common law right of recoupment. *See Mount Sinai Hosp. of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir.1975). Assuming that we would recognize a common law right of recoupment, the record is devoid of any indication that the facilities presented false information to the Commis-

sion. Although this aspect of the case is the subject of ongoing administrative proceedings, it appears from the record that discrepancies between the 1985 fiscal year calculations and calculations made in 1987 turn on varying interpretations of "reasonable allocation method."

7. Alaska Statute 47.07.074 provides:
*Audits and inspections.* As a condition of obtaining payment under AS 47.07.070, a health facility shall allow
(1) the department and the commission reasonable access to the financial records of medical assistance beneficiaries; and
(2) inspection of financial records by state and federal agencies to the extent required by federal law.

8. *See, e.g., Etheredge v. Bradey*, 502 P.2d 146, 153 (Alaska 1972).

352

technically moot questions merit review under the "public interest" exception to the mootness doctrine.[9] We recently articulated the criteria to be considered in determining whether to review a moot question:

> The public interest exception involves the consideration of three main factors: 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issue and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.

*Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985) (citations omitted).

We agree with the hospitals that the public interest exception to the mootness doctrine applies and have decided to address this issue. The issue is likely to arise again, may well evade review, and is of considerable public importance.

■■■ The hospitals allege that Randy Super's participation as a member of the Commission at the December 11, 1987, hearing was unlawful because he was not appointed by the governor as required by AS 47.07.120–.130. The State contends that his participation was proper, that is, that AS 47.07.120 only required Mr. Super's appointment by the DHSS Commissioner as her designee.

The superior court did not resolve the issue by interpreting AS 47.07.120–.130. Instead, the court relied on AS 44.17.010, which provides:

> *Delegation of functions.* The principal executive officer of each state department may assign the functions vested in the department to subordinate officers and employees.

The State buttresses the superior court's decision by reference to AS 44.17.040, which includes the word "appointments":

> *Department staffs.* The principal executive officer of each department may establish necessary subordinate positions, make appointments to these positions, and remove persons appointed within the limitations of appropriations and subject to state personnel laws. Each person appointed to a subordinate position established by the principal executive officer is under the supervision, direction, and control of the officer.

It is a maxim of construction that specific statutes should be given precedence over more general ones. *See, e.g., National Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 817 & n. 10 (Alaska 1982) (citing numerous authorities). Guided by this maxim, we reject the superior court's reliance on AS 44.17.010 and the State's concomitant reliance on AS 44.17.040. Alaska Statutes 47.07.110, .120, and .130 are more specific, and we hold that they control. Those statutes provide:

> AS 47.07.110. *Medicaid Rate Commission established.* The Medicaid Rate Commission is established in the Department of Health and Social Services. (§ 6 ch. 95 SLA 1983)

> AS 47.07.120. *Composition of commission.* The commission consists of five members as follows:

> (1) the chief executive officer of a health facility that is licensed by the state but not owned or operated by the state or federal government and that is subject to the budget review process under this chapter;

> (2) the commissioner of administration, the commissioner of health and social services, or the appointed designee of either commissioner;

> (3) a physician licensed to practice medicine in the state who is actively engaged in the practice of medicine and who is not employed by the state;

> (4) a certified public accountant with relevant experience;

> (5) a person representing consumers of health services who does not have a direct or indirect interest in any entity

---

9. *See, e.g., Falke v. State,* 717 P.2d 369, 371 (Alaska 1986) (addressing merits of a claim that candidate's name should have been on ballot although election had already been held); *Kentopp v. Anchorage,* 652 P.2d 453, 457–58 (Alaska 1982) (addressing merits of malapportionment claim even though reapportionment plan had already been implemented) and cases cited therein at 457 n. 3.

that provides health care services. (§ 6 ch. 95 SLA 1983)

AS 47.07.130. *Appointment of members.* Members of the commission are appointed by the governor and serve at the pleasure of the governor. (§ 6 ch. 95 SLA 1983)

■ Furthermore, we agree with the hospitals' argument that the superior court's decision also violates other principles of statutory construction. First, construing "appointed designee" to have the same meaning as "designee" violates the presumption that every word of a statute has a purpose and is not superfluous.[10]

■ Second, "statutes relating to the same subject matter should be read together as a whole in order that [the] total scheme ... avoids ignoring one or the other." *National Bank of Alaska v. State, Dep't of Revenue,* 642 P.2d 811, 818 (Alaska 1982) (quoting *Hafling v. Inlandboatmen's Union of the Pacific,* 585 P.2d 870, 878 (Alaska 1978)). That is, AS 47.07.130's requirements that all members be appointed by the governor cannot be ignored. Thus, we reject the State's implicit argument that AS 47.07.120(2) trumps the "general rule" stated in AS 47.07.130.[11]

The judgment of the superior court is REVERSED.

---

**10.** *See, e.g., Alaska Transp. Comm'n v. Airpac, Inc.,* 685 P.2d 1248, 1253 (Alaska 1984) (quoting 82 C.J.S. *Statutes* § 316, at 551–52 (1953)); *Alascom, Inc. v. North Slope Borough,* 659 P.2d 1175, 1178 & n. 5 (Alaska 1983) (quoting 2A C. Sands, *Statutes and Statutory Construction* § 46.06 (4th ed. 1973)); *City of Homer v. Gangl,* 650 P.2d 396, 399 (Alaska 1982); *City and Borough of Juneau v. Thibodeau,* 595 P.2d 626, 634 (Alaska 1979) (citing *State v. Lundquist,* 60 Wash.2d 397, 374 P.2d 246 (1962)).

**11.** Our resolution of the recoupment issue makes unnecessary any discussion of the superior court's decision not to strike affidavits which allegedly were out of compliance with Civil Rule 56(e), as well the need to address the attorney's fees issue. Upon remand the superior court should determine the appropriate amount of attorney's fees available to Cordova and Petersburg under Civil Rule 82.