**MUNICIPALITY OF ANCHORAGE,
Appellant and Cross–Appellee,**

v.

**ANCHORAGE DAILY NEWS, Appellee
and Cross–Appellant.**

Nos. S–2647, S–3076, S–3033.

Supreme Court of Alaska.

May 4, 1990.

Rehearing Denied June 5, 1990.

Richard D. Kibby, Mun. Atty., Kevin Finnigan, Asst. Mun. Atty., Anchorage, for appellant and cross-appellee.

D. John McKay, Middleton, Timme & McKay, Anchorage, for appellee and cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION.

These consolidated appeals [1] involve various disputes relating to the Anchorage Daily News' requests for certain municipality documents.

Case No. S–2647 arose out of the municipality's refusal to provide the Daily News with an employee performance report issued by the Anchorage Library Advisory Board. The superior court ordered that the Library Board release this report pursuant to a pre-existing injunction obtained by the Daily News in an earlier case involving the same parties. The report was released, and a story published without the municipality requesting a stay of the superior court's order.

Case No. S–3033 arose out of the municipality's refusal to release a "Blue Ribbon Panel" fiscal report to the Daily News. The superior court similarly ordered that this document be released to the Daily News, with which order the Municipality also has complied.

Finally, Case No. S–3076 also arose out of the parties' dispute over the Blue Ribbon Panel report. The municipality requested, and the superior court ordered, that the municipality be permitted to depose certain Daily News staff as to whether the public's interest in being apprised of the Blue Ribbon fiscal report was greater than the Mayor's interest in keeping it confidential.

Thus, the municipality appeals the two release orders,[2] and the Daily News appeals the superior court's deposition order.

## II. FACTS AND PROCEEDINGS.

In 1984, prior to the events directly relevant to these appeals, Anchorage Assemblyman Don Smith pled *nolo contendere* to a traffic violation. The Daily News sought the release of a tape-recording of a conversation which took place between a police officer and Smith at the time of the incident. The request was denied by the Police Department, the Prosecutor's Office, and the Mayor's Office. The Daily News then filed a complaint in superior court seeking release of the tape and other injunctive and declaratory relief. The tape was released and, after a hearing on the Daily News' requests for permanent injunctive and declaratory relief, summary judgment was entered in favor of the Daily News on terms stipulated by the parties. The final judgment, including the judgment's provisions for injunctive relief relevant to the two document release appeals now before this court, reads in relevant part as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. As required by A.S. 09.25.110 *et. seq.*, and AMC 3.90, all documents, files and records, including drafts, in the possession of the Municipality of Anchorage or its agencies, shall be available for public inspection, subject only to narrowly construed exceptions based on need, set forth in legally valid and controlling provisions of federal, state, or municipal law.

2. Municipal employees and agents shall permit public access to municipal records under reasonable rules during regular office hours, unless nondisclosure is specifically authorized by law. The obligation of the Municipality to provide public access to municipal records is not satisfied by providing the documents requested to a third party, including a public official, for release. Additionally, the Municipality may not delay or otherwise manipulate the release of public records, the disclosure of which is required under A.S. 09.25.110 *et. seq.*, or AMC 3.90.110 *et. seq.*, for political or other extralegal purposes of the Municipal administration, public officials, or third parties.

---

1. The three cases discussed in this opinion were consolidated pursuant to Appellate Rule 204(g).

2. Other municipal officials named in the original action have not appealed.

3. Municipal defendants wrongfully withheld and delayed release of the tape-recorded conversation of Anchorage Assembly member Don Smith at issue in this case, after access to that tape recording was requested by the Anchorage Daily News in [sic] January 18, 1985.

IT IS FURTHER ORDERED THAT:

1. The Municipality of Anchorage shall distribute to all municipal employees a copy of standard instructions regarding access to municipal records, in the form stipulated to by the parties on or about April 3, 1985. Distribution of that memorandum shall be accomplished within two weeks following entry of Final Judgment.

. . . .

The municipality did not appeal from this judgment. The components of this injunction were the basis for the superior court's rulings now before us in these consolidated appeals.

### A. *S–2647: The Revelle Case—Facts and Proceedings.*

In November of 1987 the Anchorage Library Advisory Board ("Board" or "Library Board") met to discuss the performance of Head Librarian Keith Revelle. Pursuant to municipal ordinance, this Board has the power to:

> Make recommendations to the administration and Assembly for the adoption, change, repeal or alteration of the rules, regulations, restrictions on library services, and all other matters directly or indirectly affecting the municipal library program.

AMC 4.60.040(B). After its meeting, the Library Board prepared and forwarded a confidential evaluation of Revelle's performance to Mayor Fink. The Board and Mayor Fink refused to release this report to the Daily News, and the Daily News subsequently filed suit in superior court. The superior court ordered that the report be released. The document was released, and a story based on it published without the municipality's requesting a stay.

The municipality appeals the superior court's order compelling release of the Library Board report on the grounds that:

(1) the 1985 injunction did not require that the report be released; (2) Revelle should have been given notice and an opportunity to be heard or joined as a party before the document was released; (3) the report was confidential, subject only to release to the Mayor; and (4) the release was not properly predicated on the 1985 injunction.

### B. *S–3033: The Blue Ribbon Panel Report Case—Facts and Proceedings.*

Case No. S–3033 arose out of the municipality's refusal to release to the Daily News a report issued by the mayor's Blue Ribbon Fiscal Policy Committee. This committee was comprised of local citizens appointed by Mayor Fink for the purpose of preparing a report on Anchorage's economic condition. After a hearing, the superior court ordered the release of the committee's report. The municipality unsuccessfully moved for a stay, and ultimately failed to comply with the order. The superior court held the municipality in contempt, and the report was released.

The municipality appeals this order of the superior court on the grounds that (1) the mayor's executive privilege barred disclosure of the report, and (2) the Blue Ribbon Panel was an executive body, not an agency, so its work product is not subject to state or municipal public disclosure laws.

### C. *S–3076: The Deposition Case—Facts and Proceedings.*

In Case No. S–3076 the Daily News appeals a superior court order denying its motion to quash depositions of certain Daily News employees. The municipality sought these depositions in response to the Daily News' complaint seeking release of the Blue Ribbon Panel Fiscal Report. The depositions ordered have since taken place. The Daily News argues that depositions of persons requesting public records should not be allowed or, in the alternative, that the government's power to compel such depositions should be strictly circumscribed to protect the rights of press and public to access to public documents.

## III. DISCUSSION.

### A. Mootness.

█ The disputes which prompted these lawsuits are technically moot. The Revelle evaluation and Blue Ribbon Panel report have already been released; Daily News personnel requesting the Blue Ribbon Panel report have already been deposed. In each case the losing party has submitted to an order by the superior court, the effects of which cannot be undone. Thus, none of the consolidated appeals presents a live controversy. As a general rule, we "refrain from deciding questions 'where the facts have rendered the legal issues moot.'" *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985) (quoting *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971)). However, we have held that mootness doctrine is a product of judicial policy, not constitutional mandate,[3] and have recognized on numerous occasions that certain technically moot questions merit review under the "public interest" exception to the mootness doctrine.[4] This court recently reiterated the criteria to be considered in determining whether to review a moot question:

> The public interest exception involves the consideration of three main factors: 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issue and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.

*Hayes*, 693 P.2d at 834 (citations omitted).

We conclude that the questions presented in these appeals come within the public interest exception. First, the issues are capable of repetition so long as newspapers and other members of the public continue to make requests for documents from the municipality. Indeed, a history of ongoing document request disputes between the municipality and the Daily News is reflected in the record before us. Second, it is possible for document request cases repeatedly to evade review by application of the mootness doctrine, since time is of the essence in release cases and orders by the superior court will normally be enforced prior to review by this court. Finally, the questions presented are of considerable public importance. Therefore, we decline to apply the mootness doctrine to any of the issues in these consolidated appeals.

### B. The 1985 Injunction.

█ As a preliminary matter, we must decide whether the superior court's 1985 permanent injunction has continuing validity against the municipality. We conclude that the superior court erred in applying the terms of the 1985 injunction to the present disputes between the Daily News and the municipality.

As noted at the outset, the 1985 injunction was issued in the context of a Daily News request for access to police recordings, circumstances wholly unrelated to those at issue in the instant appeals. Yet injunctions must be specific in their terms, and must describe in reasonable detail the conduct enjoined. *See* Civil Rule 65(d).[5] Therefore, the 1985 injunction could have continuing force, if at all, only in circumstances similar to those for which it was drafted (i.e., to compel disclosure of police recordings) and the superior court erred in holding it applicable here. If the Daily

---

3. *See, e.g., Etheredge v. Bradley*, 502 P.2d 146, 153 (Alaska 1972).

4. *See, e.g., Falke v. State*, 717 P.2d 369, 371 (Alaska 1986) (addressing merits of a claim that candidate's name should have been on ballot although election had already been held); *Kentopp v. Anchorage*, 652 P.2d 453, 457–58 (Alaska 1982) (addressing merits of malapportionment claim even though reapportionment plan had already been implemented) and cases cited therein at 457 n. 3.

5. Civil Rule 65(d) provides:

> (d) *Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[;] and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

News now desires permanent injunctive relief, it should seek issuance of a permanent injunction addressed to the specific problems of which it now complains.

Essentially, the 1985 injunction commands the municipality, in language of a rather broad scope,[6] to adhere to its pre-existing duties under state law. Although we hold that the terms of the 1985 injunction are not enforceable against the municipality for purposes of these appeals, we must nonetheless examine the validity of the superior court's holdings under Alaska's public records law.

### C. The Revelle Memorandum.

In this case the municipality seeks review of the superior court's order requiring the Anchorage Library Advisory Board to release to the Daily News a performance evaluation report pertaining to head librarian Keith Revelle. The superior court held that the Board was a public entity acting in an official capacity and that the report it produced was a public record, subject to the Alaska Public Records Act, AS 09.25.110 and .120. We affirm that ruling.

 We agree with the superior court's conclusion that the Library Board is a municipal entity and as such is subject to the disclosure requirements of the Public Records Act, *supra*, and the Open Meetings Act, AS 44.62.310 *et seq.* Alaska's public records statutes apply to municipalities, and codify the common law right of the public to access to government records.[7] AS 09.25.110 provides:

*Inspection and copies of public records.* Unless specifically provided otherwise

the books, records, papers, files, accounts, *writings* and transactions *of all agencies and departments are public records* and are open to inspection by the public under reasonable rules during regular office hours. The public officer having the custody of public records shall give on request and payment of costs a certified copy of the public record.

(Emphases added.) AS 09.25.120 reads in relevant part:

*Inspection and copying of public records.* Every person has a right to inspect a public writing or record in the state, including public writings and records in recorders' offices except (1) records of vital statistics and adoption proceedings which shall be treated in the manner required by AS 18.50; (2) records pertaining to juveniles; (3) medical and related public health records; (4) records required to be kept confidential by a federal law or regulation or by state law. Every public officer having the custody of records not included in the exceptions shall permit the inspection, and give on demand and on payment of the legal fees therefor a certified copy of the writing or record ... subject to reasonable rules and regulations....

Exceptions to these disclosure requirements are construed narrowly in furtherance of the legislature's expressed bias in favor of broad public access.[8] Such exceptions include those embodied in federal and state law, and those adopted by "municipalities ... [where] based on need." *City of Kenai v. Kenai Peninsula Newspapers,* 642 P.2d 1316, 1323 (Alaska 1982).

---

6. Because we hold the injunction inapplicable to the instant controversies, we need not reach the issue of its putative overbreadth. In any event, the municipality has waived any right it might have had to challenge the injunction as overbroad. The municipality did not appeal the 1985 injunction when it was issued; nor did it then complain, as it now does, that the injunction was overbroad or ambiguous. *See, e.g., Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 351 (Alaska 1982) (arguments not presented to the trial court will not be addressed on appeal). Moreover, we note that the terms of the injunction were consented to by the municipality.

7. *See City of Kenai v. Kenai Peninsula Newspapers,* 642 P.2d 1316, 1320–21 (Alaska 1982).

8. In *City of Kenai,* 642 P.2d at 1323, we observed:

In striking a proper balance the custodians of the records in the first instance, and the court in the next, should bear in mind that the legislature has expressed a bias in favor of public disclosure. Doubtful cases should be resolved by permitting public inspection.

(citing AS 44.62.312(a), .110, and .120). *See also Doe v. Alaska Superior Court, Third Judicial District,* 721 P.2d 617, 622 (Alaska 1986).

■ The municipality argues that state law creates an express exception exempting the work product of executive sessions held pursuant to the Open Meetings Act, AS 44.62.310 *et seq.,* from the public records laws. We have held that a government agency subject to the Open Meetings Act may, under AS 44.62.310(c)(2), meet in executive session to discuss matters tending to prejudice a person's reputation or character. *City of Kenai,* 642 P.2d at 1326; *Univ. of Alaska v. Geistauts,* 666 P.2d 424, 429 (Alaska 1983).[9] However, we have never held that this statute, which provides for closed executive sessions when subjects potentially prejudicial to reputation are discussed, establishes an exception to the pro-disclosure requirements of the Public Records Act or otherwise permits the suppression of documents produced at such sessions. In fact, we have implied the opposite.

Our decision in *City of Kenai* indicates that the secrecy provisions of the Open Meetings Act have not been judicially incorporated into the Public Records Act. *See* 642 P.2d at 1323–25. There we were asked to decide whether the City of Kenai properly denied a newspaper reporter access to a meeting and records relating to city manager applications. *Id.* at 1317. We concluded that the meetings could be held in executive session under the "reputation" provision of the Open Meetings Act, but that the records discussed at the closed meeting, including personnel job applications, were subject to disclosure under the Public Records Act. *Id.* at 1322–26. In accordance with the principle that exceptions to the Public Records Act are to be construed narrowly, and in order to further the public's right to know what its government is doing,[10] we reject the view that the secrecy provisions of the Open Meetings Act authorize the non-disclosure of documents otherwise subject to disclosure under the Public Records Act.

■ Having held that no express exception to the Public Records Act is applicable, we next review the superior court's order under our public records law. In the absence of an express exception to the disclosure laws, a balance must be struck between the public interest in disclosure on the one hand, and the privacy and reputational interests of the affected individuals together with the government's interest in confidentiality, on the other. *See City of Kenai,* 642 P.2d at 1325. We have described this process of balancing as follows:

In determining whether the records should be made available for inspection in any particular instance, the court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprie-

---

**9.** Alaska Statute 44.62.310 provides, in relevant part:

*Government meetings public.*
(a) All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions or organizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section. . . .
(b) If excepted subjects are to be discussed at a meeting, the meeting must first be convened as a public meeting and the question of holding an executive session to discuss matters that come within the exceptions contained in

(c) of this section shall be determined by a majority vote of the body. . . .
(c) The following excepted subjects may be discussed in an executive session.
. . . .
(2) subjects that tend to prejudice the reputation and character of any person, provided the person may request a public discussion;
(3) matters which by law, municipal charter, or ordinance are required to be confidential.
. . . .
(e) Reasonable public notice shall be given for all meetings required to be open under this section. The notice must include the date, time and place of the meeting, and if the meeting is by teleconference the location of any teleconferencing facilities that will be used.
(f) Action taken contrary to this section is void.

**10.** *See Doe,* 721 P.2d at 622.

tary interest in public property, against the interests of the public in having the business of government carried on efficiently and without undue interference....

In balancing the interests referred to above, the scale must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference. The citizen's predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases; the burden is cast upon the agency to explain why the records sought should not be furnished. Ultimately, of course, it is for the courts to decide whether the explanation is reasonable and to weigh the benefits according to the agency from non-disclosure against the harm which may result to the public if such records are not made available for inspection.

*MacEwan v. Holm,* 226 Or. 27, 359 P.2d 413, 421–22 (1961) (En Banc) (citations omitted) (*quoted in City of Kenai,* 642 P.2d at 1325).

■ As head librarian, Keith Revelle was in charge of public library facilities, 120 public employees, and $7.2 million annually in public monies. These activities are clearly matters of legitimate public concern. *See City of Kenai,* 642 P.2d at 1324 (qualifications of applicants for municipal offices are matters of legitimate public concern).

■ Balanced against the public's right to monitor Revelle's performance is Revelle's asserted privacy interest in preventing the information in the report from being publicly disclosed. However, public officials are properly subject to public scrutiny in the performance of their duties.[11] Moreover, in the instant case the superior court expressly found that the performance evaluation did not in any way deal with the personal, intimate, or otherwise private life of Keith Revelle. This finding is not clearly erroneous. Under these circumstances the balance of competing interests falls on the side of the public's interest in free access to public documents.[12] Thus, the superior court's decision compelling release of the report is affirmed.[13]

**11.** In *City of Kenai,* we emphasized that

The applicants' individual privacy interests in having their names and applications not revealed are also not of an order sufficient to overcome the public's interest. The applicants are seeking high government positions. *"Public officials must recognize their official capacities often expose their private lives to public scrutiny."*

*Id.* at 1324 (footnotes omitted and emphasis added).

**12.** *See University of Pennsylvania v. EEOC,* —— U.S. ——, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). In that case the Supreme Court of the United States considered a claim by the University that it enjoyed a special privilege, premised upon the alleged confidentiality of faculty peer review materials, requiring a judicial finding of particularized necessity for access to peer review documents prerequisite to release of such documents to a Title VII plaintiff. The Court rejected this contention, holding that peer review materials enjoy no special privilege against discovery. *Id.* 110 S.Ct. at 581–586.

**13.** The municipality also argues that (1) Revelle should have been joined under Civil Rule 19; (2) compelling the municipality's release of the Library Board report could lead to municipal liability for defamation; and (3) the superior court's release order was flawed because Re-

velle was not provided notice of the potential release of the evaluation and an opportunity to object to release of personal matters possibly contained therein. Our review of the record persuades us that these arguments are without merit.

Civil Rule 19(a) provides in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest....

We have recognized that persons whose job qualifications and performance are to be discussed have an interest in confidentiality. In *City of Kenai,* for instance, we held that reputational interests should be balanced against those relating to public access before deciding whether to order the release of a document. *See* 642 P.2d at 1323. However, while Revelle might have had an "interest" in this case, joinder would not have enabled him to protect that interest. Performance evaluations of government employees who exercise discretion in their duties are subject to release as a matter of law. Revelle could have done no more to prevent

### D. *The Blue Ribbon Panel Report.*

█ The municipality argues that the superior court erred in requiring it to disclose a Fiscal Policy Committee report. The report was drafted by local citizens appointed by the mayor for the sole purpose of preparing an analysis of Anchorage's economic condition. The meetings of the panel were open to the public and press, as were materials presented at these meetings. The panel's final report was withheld from the Daily News, however. The municipality contends that (1) the Blue Ribbon Panel was exempt from public disclosure laws because the Blue Ribbon Panel was not a municipal agency; and (2) in the alternative, a municipal executive privilege authorizes non-disclosure of the report. We affirm.

The superior court correctly held that the Blue Ribbon Panel report was a public document subject to disclosure. As we have already observed, under state law, records subject to public access include all "papers" and "writings" of "all agencies and departments," AS 09.25.110 and .120, "[u]nless specifically provided otherwise" by state or federal law.[14] Exceptions are to be construed narrowly in deference to the right of citizens to know what their government is doing. *See Doe*, 721 P.2d at 622.

We affirm the superior court's conclusion that the Blue Ribbon Fiscal Panel was a municipal agency subject to the public records disclosure laws. This committee, supported in whole or in part by public money, was created to report to the mayor and assembly on the financial status of the Anchorage area. The Committee served a governmental function and dealt with matters of public concern, and was a public agency or instrumentality for purposes of the Public Records Act.

We find no specific exception to the policy of broad disclosure exempting the Panel's report from ordinary disclosure requirements. Therefore the *City of Kenai* balancing test, *see* 642 P.2d at 1325, ap-

---

release of the job related portions of the report had he appeared in this case than could the municipality. He was not an indispensable party. Thus, the superior court did not err in refusing to join Revelle under Civil Rule 19.

The municipality also raises the concern that if it is ordered to release documents which might serve to impair a person's reputation, it could possibly be held liable in a defamation action. Putting aside any question of privilege, in order to recover damages for defamation, "a plaintiff [must] prove that a defamatory statement concerning a matter of public interest was published with 'actual malice.'" *Doe v. Alaska Superior Court, Third Judicial District*, 721 P.2d 617, 627 (Alaska 1986) (citations omitted). Where a government agency releases a document in a good faith effort to comply with public disclosure law, "actual malice" will not exist.

Finally, while we can agree that it may have been desirable for Keith Revelle to have been given notice of the pending release and an opportunity to present argument to the court as to which, if any, portions of the report were personal and unrelated to the performance evaluation for purposes of convincing the court to strike such portions of the report, *see, e.g.,* AS 44.62.310(c)(2), we cannot conclude on this record that failure to notify Revelle of the pending release constituted a reversible denial of due process of law. Here we note that aside from not giving Revelle notice of the meeting, the municipality totally failed to give the general notice called for by AS 44.62.310. We have reviewed the report *in toto* and agree with the superior court's ruling that it contained nothing personal or unrelated to Keith Revelle's employment. The superior court could have, on its own motion, struck any scandalous matter from the report prior to ordering its release. The error, if any, was harmless.

**14.** Anchorage municipal law further provides that, subject to federal and state law, all "public records [are] open to public inspection." AMC 3.90.030. The term "public record" is not defined. However, a non-exhaustive list is provided, accompanied by the following statement of policy:

> The foregoing enumeration of information available for public inspection is not designed to limit the categories of records and information that shall be made available to the public, nor is it designed to require disclosure of items specifically exempted.... *The policy of providing public access to public information shall be broadly and liberally construed, and where there is no express policy governing the release of a particular report or other information, the information shall be released* providing its release does not conflict with the privacy rights of ordinary citizens.

AMC 3.90.030 (emphasis added). Municipal law also requires the municipality to give "full disclosure of all records in the *possession or control* of the municipality," except those specifically exempted. AMC 3.90.010 (emphasis added).

plies. Contrasted with the public's fundamental right of access to governmental records such as these, the government's asserted interest in keeping the records confidential is *de minimus* at best. We conclude that the superior court did not err in ordering those records released.

▬ The municipality further contends that even if the Blue Ribbon Panel report is subject to the public records disclosure laws, executive privilege permits the mayor to withhold the report since the panel consisted of executive appointees. While we have recognized a doctrine of executive privilege, applicable to state executives, *see Doe*, 721 P.2d at 611–26, we have not heretofore considered the applicability of the doctrine at the municipal level.

The doctrine of executive privilege recognizes that chief executives sometimes have a qualified power to keep confidential certain internal governmental communications "so as to protect the deliberative and mental processes of decisionmakers." *Doe*, 721 P.2d at 622–23 (footnote omitted). The doctrine is designed to ensure the availability to executive decision-makers of candid advice.[15] Even assuming an executive privilege applicable to municipal executives exists,[16] the policies underpinning the qualified executive privilege are not implicated at all on the record before us. This case involves documents of an essentially public nature, and does not concern the process of confidential internal decision-making. The uncontroverted evidence is that all of the committee meetings leading up to the report were open to the public, and that the Blue Ribbon Committee was to make a final report not only to the mayor, but also to the municipal assembly. The Fiscal Report was the product of a public process,

and was intended for public dissemination. As the assembly is free to discuss and make public the content of the report, the mayor cannot argue that his deliberations and ability to obtain candid advice will be impaired by disclosure. Under these circumstances, any claim for executive privilege must be viewed with skepticism. We conclude that, even assuming the applicability of an executive privilege to municipal officers, such privilege would be unavailable on these facts, and thus the superior court's order compelling release of the Blue Ribbon Panel Report is affirmed.

### E. *Depositions of Daily News Employees.*

The superior court issued an order permitting the municipality to depose certain Daily News employees, including a reporter, the publisher, and the editor, as a prerequisite to the government's release of the Blue Ribbon Fiscal Report. The municipality's discovery was purportedly for the purpose of determining whether, under our decision in *Doe*, 721 P.2d at 617, the municipality's interest in the confidentiality of the Report outweighed the public's interest in access to the document. By contrast, the Daily News suggests the depositions were noticed for purposes of delay or harassment.

▬ The municipality's reliance upon *Doe* is misplaced. When the government seeks to deny access to a particular public document, it is the government who bears the initial burden of presenting evidence justifying denial. *See Doe*, 721 P.2d at 626 (entity claiming privilege has initial burden of presenting prima facie defense to release).[17] As the party requesting re-

---

**15.** The Supreme Court of the United States has emphasized that the primary impetus for the qualified privilege is the need to protect

> The public interest in candid, objective, and even blunt or harsh opinions in presidential decision making. A president and those who assist him must be free to explore alternatives ... and to do so in a way many would be unwilling to express except privately.

*United States v. Nixon,* 418 U.S. 683, 708, 94 S.Ct. 3090, 3107–08, 41 L.Ed.2d 1039, 1064 (1974).

**16.** We express no opinion with respect to this issue.

**17.** As we said in *Doe:*

> [Any] claim of privilege must satisfy strict procedural requirements. In particular, the government must specifically identify and describe the documents sought to be protected and explain why they fall within the scope of the executive privilege. Since a court usually must rely on an affidavit of the responsible department head for information necessary to determine whether to recognize the privilege,

lease will not normally possess evidence that a document is not protected by executive privilege, depositions of those seeking release will generally be of no use to the government in satisfying this burden. Only if this initial burden has been satisfied is the government entitled to depose those whose factual knowledge the party seeking release will rely on in making a case for disclosure. In short, a governmental agency is not entitled to delay access through the use of depositions where it has presented no prima facie defense to release.

In the case at bar, the superior court did not require the municipality to make a prima facie case for its defense to the document release request, and we hold that it erred in refusing to quash or stay the depositions. The government made no initial showing at all as to why the doc-

ument sought should not be subject to release.[18]

The Daily News timely moved in the superior court for an order quashing the disputed depositions pursuant to Civil Rules 26 and 30. The superior court denied the motion. We hold that the superior court abused its discretion in this respect.[19] Since the government failed to meet its burden of establishing a prima facie case, any evidence discovered in the deposition proceedings would be inadmissable. The depositions at issue here thus failed to satisfy the most fundamental requirement for discovery, since they were not "reasonably calculated to lead to the discovery of admissible evidence." Civil Rule 26(b)(1).[20] A protective order should have been granted the Daily News pursuant to Civil Rule 26(c).[21]

---

the affidavit should be based on personal examination of the documents by the affiant official. *Id.* The party seeking discovery then must make a sufficient showing that the need for production outweighs the interest in confidentiality. *United States v. Nixon,* 418 U.S. at 713–14, 94 S.Ct. at 3110–11, 41 L.Ed.2d at 1067; *Senate Select Committee on Presidential Campaign Activities v. Nixon,* 498 F.2d 725, 730 (D.C.Cir.1974). Upon such a showing, the trial court should review the documents *in camera* before deciding whether to order production. In the absence of such a showing, a claim of privilege should be honored without requiring an *in camera* inspection. *Senate Select Committee,* 498 F.2d at 730.

18. The Daily News also argues in this appeal that the press is entitled to a qualified immunity, based on the first amendment, from certain inquiries into the editorial process. We have not heretofore addressed the issue of a "pressman's privilege," and we decline to do so in this case. The argument was not presented to the superior court and is deemed waived. *See, e.g., Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 351 (Alaska 1982) (arguments not presented to the trial court will not be addressed on appeal). Our holding that it is the government, not the party seeking access, which bears the initial burden of demonstrating the need to withhold public records is a sufficient basis for reversing the superior court's order refusing to quash the depositions. We believe that for the time being the civil rules applicable to discovery constitute a sufficient device for controlling harassment of the type alleged here, and decline to reach the broader constitutional issue.

19. Courts typically review discovery orders under the abuse of discretion standard. *See, e.g., Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977).

20. Civil Rule 26(b)(1) provides:

(b) *Scope of Discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(i) *In General.* Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

21. Civil Rule 26(c) provides:

(c) *Protective Orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the judicial district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or

595

## IV. CONCLUSION.

The superior court's orders compelling release of Keith Revelle's employment evaluation and the Blue Ribbon Panel report are AFFIRMED. The superior court's order refusing to quash the disputed depositions is REVERSED.

place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only by a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.