Abigail FULLER and Kachemak Area Coalition, Inc., d/b/a Citizens Concerned About Annexation, Appellants,

v.

CITY OF HOMER, Appellee.

No. S–10079.

Supreme Court of Alaska.

Aug. 15, 2003.

---

Brooks W. Chandler, Hicks, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellants.

Gordon J. Tans, Perkins Coie, LLP, Anchorage, for Appellee.

D. John McKay, Law Offices of D. John McKay, Anchorage, for Amicus Curiae Alaska Press Association.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

We are asked here to consider whether the City of Homer's city manager could properly claim the deliberative process privilege to deny public access to staff documents that he used in preparing a petition for annexation that the city filed with the Alaska Local Boundary Commission. Because the record shows that the public's interest in having access to these documents outweighs the city's interest in confidentiality, we conclude that the privilege does not apply and that the Alaska Public Records Act requires their disclosure.

## II. FACTS AND PROCEEDINGS

In December 1999 the Homer City Council passed a resolution directing its city manager, Ron Drathman, to prepare a time line and work plan for annexing certain areas adjoining the city that were benefiting from city services. In response to this directive, Drathman wrote to his department heads, notifying them of the proposed annexation's general scope and assigning each department certain tasks that would provide Drathman the basis for preparing his annexation proposal. Drathman's memorandum warned against premature disclosure of the requested information: "To avoid confusion: *This information should not be released to [the] public or Commissions until the Staff plan is complete. This is a Staff Work in progress.*" After receiving responses from his staff, Drathman completed a proposed petition for annexation and submitted it to the city council. By a resolution passed on March 13, 2000, the city council approved Drathman's proposed petition, directed

Drathman to file it with the Alaska Local Boundary Commission, and designated him as the city's representative in the annexation proceedings. Drathman filed the petition the following week.

Soon after the petition was filed, Homer resident Abigail Fuller wrote to the city clerk, asking to inspect various records relating to the petition;[1] Fuller specified that her request was based on the Alaska Public Records Act and provisions of the Homer City Code that cover public release of records.[2] Drathman made available some of the requested documents but withheld many others, invoking the deliberative process privilege. Fuller appealed to the city council, which upheld Drathman's claim of privilege without reviewing the requested records.

Fuller then appealed to the superior court. The court remanded the case to the council, directing it to review the requested documents and to reconsider its decision based on the review. After conducting the review as ordered, the council released the documents that had already been made public but reaffirmed its decision as to the remaining documents. The superior court ultimately upheld the council's decision.

Fuller appeals, claiming that the deliberative process privilege does not apply and that she is entitled to full disclosure.

## III. DISCUSSION

### A. Standard of Review

In the present case, we review the city council's decision directly: "When a superior court acts as an intermediate court of appeal we give no deference to its decision."[3] We apply our independent judgment in deciding the legal issues presented by the case.[4]

### B. Statutory Background

The claim of privilege in this case arises against the backdrop of Alaska's public records act and the Homer city code's public release of records ordinance. Alaska's public records act provides that "[u]nless specifically provided otherwise, the public records of all public agencies are open to inspection by the public under reasonable rules during regular office hours."[5] The act applies to both state and local officials and departments.[6] And it broadly defines "public record" to include a vast array of official documents:

> books, papers, files, accounts, writings, including drafts and memorializations of conversations, and other items, regardless of format or physical characteristics, that are developed or received by a public agency, or by a private contractor for a public agency, and that are preserved for their informational value or as evidence of the organization or operation of the public agency[.][7]

The breadth of this definition reflects Alaska's strong commitment to ensuring broad public access to government records.[8] We have repeatedly held that the act creates a

1. Co-appellants Citizens Concerned About Annexation separately submitted a similar request and received essentially the same response as Fuller; since our consideration of Fuller's claim disposes of all issues raised on appeal, we need not separately consider CCAA's claim.

2. Specifically, Fuller cited AS 09.25.110 and Homer City Code (HCC) 1.80.060. After Fuller submitted her request, Alaska's public records act—initially codified as AS 09.25.100–.124—was renumbered as AS 40.25.100–.124. Thus, the provision cited by Fuller, former AS 09.25.110, now appears as AS 40.25.110. See AS 40.25.110 Historical Notes. This opinion will cite the public records act as it is currently codified.

3. Gwich'in Steering Comm. v. State, Office of the Governor, 10 P.3d 572, 577 (Alaska 2000).

4. Id. at 577–78.

5. AS 40.25.110(a).

6. AS 40.25.220(2) (defining "public agency" as "a political subdivision, department, institution, board, commission, division, authority, public corporation, council, committee, or other instrumentality of the state or a municipality") (emphasis added); see also Municipality of Anchorage v. Anchorage Daily News, 794 P.2d 584, 589 (Alaska 1990) ("Alaska's public records statutes apply to municipalities[.]").

7. AS 40.25.220(3).

8. Gwich'in Steering Comm., 10 P.3d at 578; City of Kenai v. Kenai Peninsula Newspapers, Inc., 642 P.2d 1316, 1323 (Alaska 1982); see also Doe v. Alaska Superior Court, 721 P.2d 617, 625 (Alaska 1986) (involving request for documents in litigation discovery rather than a request under the public records act).

presumption in favor of disclosure [9] and that the act's implicit legislative policy of broad public access requires courts to narrowly construe exceptions to disclosure.[10] The legislative findings to the 1990 amendments to the public records act explain that public access serves as an important "check and balance" that allows citizens to maintain "control of government." [11] And our decisions have characterized public access to records as a "fundamental right." [12]

In *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, we likened the policy supporting the act's right of public access to the philosophy underlying Alaska's open meetings act, which requires that all government agencies covered by the statute act "openly and that their deliberations be conducted openly." [13] Moreover, we have emphasized that broad public access to government records is a vitally important part of our contemporary system of government:

> The cornerstone of a democracy is the ability of its people to question, investigate and monitor the government. Free access to public records is a central building block of our constitutional framework enabling citizen participation in monitoring the machinations of the republic. Conversely, the hallmark of totalitarianism is secrecy and the foundation of tyranny is ignorance. It has been written that "[i]f a nation expects to be ignorant and free, in a state of civilization, it expects what never was and never will be."% [14]

Fortifying the provisions of Alaska's public records act, the City of Homer's public records ordinance ensures even broader public access to city records. It declares the city's intent "to provide full and free access of the public to municipal records and information so that the people of the City may be well informed at all times as to municipal business." [15] And it specifies that the types of records open to public inspection "shall include, but shall not be limited to," among other things, "[f]inancial and operational cost information, including information as to revenues, expenditures, indebtedness, *department budget requests, and formal departmental recommendations in regard to project priority;* ... [and] [*f*]*easibility, management, cost effectiveness and similar reports* prepared by the municipality with municipal moneys." [16] Moreover, Homer's ordinance emphasizes that this "policy of providing public access to public information shall be broadly and liberally construed." [17]

### C. The Deliberative Process Privilege

With these legislative provisions and their broad underlying purposes in mind, we next consider the role of the deliberative process privilege. Alaska's public records act sets out a limited number of exceptions to its broad disclosure requirements; one of these exceptions is for "records required to be kept confidential by ... state law." [18] On two

---

**9.** *E.g., Anchorage Daily News*, 794 P.2d at 589; *Kenai Peninsula Newspapers, Inc.*, 642 P.2d at 1323.

**10.** *Gwich'in Steering Comm.*, 10 P.3d at 578; *Capital Info. Group v. State, Office of the Governor*, 923 P.2d 29, 33 (Alaska 1996); *Anchorage Daily News*, 794 P.2d at 589; *Doe, 721 P.2d at 622.

**11.** Ch. 200, § 1, SLA 1990.

**12.** *Gwich'in Steering Comm.*, 10 P.3d at 578; *Kenai Peninsula Newspapers, Inc.*, 642 P.2d at 1323 (quoting *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413, 421–22 (1961)).

**13.** 642 P.2d at 1324 (quoting AS 44.62.312(a)). More specifically, *Kenai Peninsula Newspapers, Inc.* states:

> There is a strong public interest in disclosure of the affairs of government generally, and in

an open selection process for high public officials in particular. AS 44.62.312(a) powerfully expresses the philosophy underlying this [public interest]....

> ....

> In addition, [AS 40.25].110 and .120 articulate a broad policy of open records.

*Id.* at 1323–24.

**14.** *Jones v. Jennings*, 788 P.2d 732, 735–36 (Alaska 1990) (citations omitted).

**15.** HCC 1.80.010 (1995).

**16.** HCC 1.80.030 (1983) (emphasis added).

**17.** *Id.*

**18.** AS 40.25.120(a)(4) ("Every person has a right to inspect a public record in the state, including public records in recorders' offices, except ...

prior occasions, we have recognized that at common law courts recognized a deliberative process privilege.[19] And because Alaska's statutory definition of "state law" encompasses common law as well as positive law, we have held that the deliberative process privilege is "one of the judicially recognized 'state law' exceptions" to public access under the public records act.[20] In so holding, we have explained that the deliberative process privilege is intended to "protect[ ] the mental processes of government decisionmakers from interference."[21] And we have noted, generally, that "[p]ublic officials may assert this privilege and withhold documents when public disclosure would deter the open exchange of opinions and recommendations between governmental officials."[22]

■ Our cases hold that to establish a prima facie claim to this privilege in any given case, the government must show that the document whose disclosure is sought is an internal communication or one that the government directly solicited and that the communication is both predecisional and deliberative.[23] If the court reviews the document and finds that it meets these criteria, the privilege presumptively attaches, overriding the public records act's usual presumption of disclosure.[24] The burden then shifts to the requesting party to demonstrate

that the public's interest in disclosure outweighs the government's interest in confidentiality.[25]

■ Whether a particular document supports a prima facie claim of privilege under this analysis is a question for case-by-case decision. We have upheld deliberative process privilege claims in only two prior cases, both of which involved important political or policy decisionmaking at the highest levels of government. In *Capital Information Group v. State, Office of the Governor,* we approved the governor's invocation of the privilege for documents concerning state legislative proposals, emphasizing that development of the governor's legislative package is "one of the most sensitive and important functions that the Governor performs while in office, and the need for frank discussion of policy matters among the Governor's advisors is perhaps greater here than in any other area."[26] And in *Gwich'in Steering Committee v. State, Office of the Governor,* we approved the governor's reliance on the privilege to block disclosure of documents concerning lobbying for the Arctic National Wildlife Refuge, reasoning that the governor's national lobbying efforts on behalf of the state were as important as his formulation of a state

records required to be kept confidential by a federal law or regulation or by state law[.]"). The city's public records ordinance similarly recognizes an exception when state or federal law would prevent disclosure. HCC 1.80.030 (1983) (requiring all city records to be open to disclosure "[e]xcept as provided by Section 1.80.040, or by other provisions of municipal, state or federal law").

19. *Gwich'in Steering Comm. v. State, Office of the Governor,* 10 P.3d 572, 578 (Alaska 2000); *Capital Info. Group v. State, Office of the Governor,* 923 P.2d 29, 34 (Alaska 1996).

20. *Gwich'in Steering Comm.,* 10 P.3d at 578.

21. *Id.*

22. *Id.*

23. *Id.* at 579, 581; *Capital Info. Group,* 923 P.2d at 35–36. *Gwich'in's* description of these requirements can be summarized as follows. A document qualifies as predecisional if it was written before deliberations ended. 10 P.3d at 579. The government official claiming the privi-

lege does not have to link the document to a specific decision because the privilege protects the process, "not final decisions." *Id.* at 581. A document satisfies the deliberative test if it includes policy discussions that have "opinions, recommendations, or advice about agency policies." *Id.* at 579. If a document contains just facts, then it is not deliberative unless the facts are enmeshed in the decisionmaking process or the process would be revealed by the document's release. *Id.* Documents that contain "opinions and interpretations" of a policy decision already made are not considered deliberative. *Id.*

24. *Id.; see also City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316, 1323 (Alaska 1982) (discussing presumption in favor of disclosure and balancing test that applies in deciding whether exemption to public records act applies in absence of claim of privilege).

25. *Gwich'in Steering Comm.,* 10 P.3d at 579; *Capital Info. Group,* 923 P.2d at 37.

26. 923 P.2d at 38.

legislative package.[27]

These decisions do not preclude a broader reach for the privilege; instead, they leave the area open to development on a case-by-case basis. But here the question does not turn on whether the city established a prima facie deliberative process claim. For as we explain below, Fuller has met her burden of demonstrating that the public's interest in disclosure outweighs the city's interest in confidentiality.

### D. Fuller's Interest in Public Disclosure Outweighs Any Legitimate Interest in Confidentiality the City Might Have.

We thus turn to Fuller's specific claim. Fuller, noting that we have never extended the deliberative process privilege to a municipal government, argues that the privilege does not extend to municipalities and that, in any event, it should not apply to the records at issue here. The city counters that municipal officials need the privilege as much as state officials and that there is no sound legal basis for declining to apply it in the municipal context. The city goes on to defend its reliance on the privilege to prevent disclosure of the records at issue here.

In our view, Fuller fails to articulate any convincing basis for declining to extend the deliberative process privilege to municipal governments. We nevertheless conclude that Fuller's request for disclosure must be honored because, on the facts of this case, the public's interest in disclosure predominates over any legitimate interest in confidentiality that Drathman might have retained after the city council opted to file his proposed annexation petition.

While Drathman certainly might have had compelling reasons to protect internal staff discussions from outside intrusion while his staff was actually deliberating the issues, the legitimacy of the city's interest in stifling disclosure after discussion ended seems far less obvious. We recognize, of course, that a predecisional and deliberative communication does not automatically lose its privileged character after deliberation ceases and a decision is made.[28] In this regard, we have held that each case must be considered on its own merits[29] and that the time elapsed after deliberations is a relevant consideration.[30] But the facts of this case weigh strongly in Fuller's favor.

Here, Fuller submitted her request for disclosure not only after Drathman's deliberative process had ended, but also after his recommendation had been submitted to and approved by the city council and after Drathman had filed the city's petition for annexation with the Local Boundary Commission. Earlier, in requesting information from his staff, Drathman expressed concern about maintaining confidentiality while his proposal was being prepared but implied that the disputed information could be disclosed once the annexation plan was completed; his memorandum instructed his staff that *"information should not be released to [the] public or Commissions until the Staff plan is complete."*[31] The council reviewed Drathman's report and elected to petition for annexation, using his report as its basis. In his affidavit supporting the annexation, Drathman expressly states that the revenues and expenses he presented to the commission reflect information developed by his various departments. The city council's decision affirming Drathman's invocation of the privilege mirrored his concerns, specifically describing the need to protect staff members from public scrutiny while their deliberations were in progress, but neglecting to specify any ongoing need for confidentiality after the

---

27. 10 P.3d at 576, 584.

28. *Id.* at 583; *Capital Info. Group,* 923 P.2d at 36.

29. *Capital Info. Group,* 923 P.2d at 36.

30. *See Gwich'in Steering Comm.,* 10 P.3d at 583–84.

31. We note that Drathman's request for information from his staff did not call for or generate any intrinsically sensitive or confidential deliberative communications. Had that been the case, the city would have been entitled to invoke applicable provisions from the public records act's extensive list of specific exemptions. *See* AS 40.25.120(a)(1)-(10).

deliberative process ended.[32]

Given these circumstances, neither Drathman nor members of his senior staff could reasonably have expected that any internal communications addressing the merits of the annexation process would remain sheltered from public disclosure under a claim of privilege after the council ultimately decided to file an annexation petition. In contrast to the city's attenuated interest in confidentiality, the public's interest in disclosure of all potentially relevant government records grew strong and specific once the council filed the annexation petition.

Our review of the disputed records confirms that the public's interest in their disclosure now clearly outweighs the city's initial interest in confidentiality. The documents are basically factual, dealing largely with issues of costs and the city's ability to extend its services. Moreover, these documents include important annexation cost information not readily available elsewhere. We find no tactical discussion that could be considered as "suggesting a strategy" for presenting the case either to the council or the local boundary commission.[33] And we see no realistic danger that post-petition disclosure would have any appreciable chilling effect on the city's future deliberative process. Thus, regardless of whether the deliberative process privilege might have justified denying access to the documents at some earlier stage of the process, we conclude that the privilege was not available by the time the council denied Fuller's request for disclosure.

## IV. CONCLUSION

Because we conclude that the deliberative process privilege did not apply in these circumstances, we REVERSE the superior court's order and REMAND with directions to grant Fuller's request for disclosure.

BRYNER, Justice, concurring.

I join in the court's opinion but would emphasize that, in my view, the strong and specific terms of the Alaska Public Records Act raise serious doubts as to whether the kind of routine governmental records at issue here—responses to a city manager's request to staff members for background information concerning a proposed annexation petition—would qualify as either "predecisional" or "deliberative" communications for purposes of establishing a prima facie claim under Alaska's deliberative process privilege.[34]

---

**32.** On this issue, the council's decision upon remand from the superior court states:

> The precept that the public should have access to the raw exchange of ideas and proposals among the city departments and the City Manager *prior to* that information being properly evaluated, analyzed, and synthesized into a meaningful conclusion is destructive to the administration's decisionmaking process and damaging to the quality of its decisions. Putting public officials in the position of placing their every untested thought or recommendation on the table for public examination and reproach *before it undergoes internal review* to identify the best recommendations or conclusions is again harmful. It would lead not only to public overreaction and needless concern, but also to reluctance by the city staff to engage in internal expressions of ideas and recommendations. These are significant harms that the privilege is intended to protect against.

(Emphasis added.)

**33.** *See Gwich'in Steering Comm.,* 10 P.3d at 581.

**34.** *Cf. City of Garland v. The Dallas Morning News,* 22 S.W.3d 351, 364 (Tex.2000).