Abigail **FULLER**, Appellant,

v.

**CITY OF HOMER**, Appellee.

No. S–11105.

Supreme Court of Alaska.

June 3, 2005.

---

Brooks W. Chandler, Hicks, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellant.

1. *Fuller v. City of Homer,* 75 P.3d 1059 (Alaska 2003).

2. *Id.* at 1061.

3. *Id.* The deliberative process privilege is an exception to the public records act intended to

Gordon J. Tans, Perkins Coie, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

When Abigail Fuller asked to see City of Homer documents concerning a disputed annexation proposal, the city required her to pay a fee for a "search" that included the city manager's privilege review of the documents. Fuller filed an action for declaratory and injunctive relief, contending that she could not be charged for the privilege review. The superior court rejected her contention and granted summary judgment to the city. We conclude that the statute and code provisions authorizing assessment of a search fee did not permit the city to charge for time spent conducting a privilege review of public documents. We therefore reverse and remand for deduction of the time the city manager spent reviewing documents for privileged information.

## II. FACTS AND PROCEEDINGS

The City of Homer attempted to annex approximately twenty-five square miles of land adjacent to the city. Abigail Fuller opposed annexation and occasionally requested access to city records bearing on annexation. We discussed some of the facts relevant here in Fuller's prior appeal, *Fuller v. City of Homer.*[1]

■ In 2000 Fuller wrote to Homer City Manager Ron Drathman asking to inspect various records related to the annexation.[2] Drathman made some of the requested documents available but withheld others, invoking the deliberative process privilege.[3] Fuller

"protect [ ] the mental processes of governmental decision-makers from interference." *Gwich'in Steering Comm. v. State, Office of the Governor,* 10 P.3d 572, 578 (Alaska 2000). Officials may invoke this privilege "when public disclosure would deter the open exchange of opinions and

appealed to the city council, which upheld Drathman's claim of privilege without reviewing the requested documents.[4] Fuller appealed to the superior court, which remanded the case to the city council, directing it to review the documents.[5] The council conducted the review and reaffirmed its prior decision.[6] The superior court upheld the city council's decision, but in August 2003 in *Fuller v. City of Homer* we reversed the superior court's decision, holding that the deliberative process privilege did not protect the documents from disclosure.[7]

While *Fuller* was on appeal to us, Fuller, by request of October 11, 2001, asked to see, among other records, the "contents of boxes CM01–03 and CM01–04 in inactive records storage, along [with] any other boxes containing annexation related material from 1998, 1999, 2000." Drathman responded that Fuller's October "request does not provide a reasonable or adequate description of the records sought. A general request to view the contents of boxes (or file cabinets, drawers, desks, offices, or departments) does not describe the records with sufficient detail to enable the city to locate and identify the records sought." Drathman also wrote that Fuller's "request cannot be approved or processed until Ms. Fuller provides a more specific description...." Apparently after receiving Drathman's response, Fuller, by letter of November 6, "followed up" her October 11 request with a somewhat more specific request. Drathman's letter in response stated, in part:

> [B]efore any substantive response can be given to her request, either the City Attorney or I, or both, will have to personally review each document in every file to determine whether it is privileged....
> This alone will take a considerable amount of time, which I currently estimate to be not less than 8–9 hours for review.
>
>  . . . .
>
> If the time necessary to respond to her request exceeds five hours, she will be

required to pay fees for producing the records; in this case, my hourly salary plus benefits.

Drathman then personally reviewed the two boxes, CM01–03 and CM01–04, and removed privileged documents. His review time totaled 7.25 hours.

Fuller later wrote to Drathman and objected to "paying your salary." She stated that

> it's your choice to go through those files yourself rather than have a clerk check them, if they need checking at all. The research fee is intended to cover time spent searching for information, not time spent sifting through old papers to make sure you aren't compromising national security, or whatever it is you are worried about.

Apparently before receiving this letter from Fuller, the city attorney wrote Fuller's attorney stating that the "boxes of files" were ready for Fuller's review, and that before she could review the documents she had to pay the city $354.59 for 7.25 hours of search time valued at $48.91 per hour. The city attorney's letter also stated that "[t]here will be an additional charge for the salary and benefits of the clerk's office personnel who assist Ms. Fuller in the searching and copying tasks. It is estimated that the time involved will be approximately seven hours...." Fuller received this letter in mid-January. Fuller refused to pay for the documents.

Fuller then filed a superior court complaint seeking "an order declaring her rights to inspect the documents to which access has been denied by" the city and "an injunction requiring that Homer comply with applicable state and local law and make the Records available for review...." During the ensuing proceedings Fuller served discovery requests seeking production of the documents listed in her October 11 request, as amended by her November 6 request, but the city objected and produced no documents in addition to

recommendations between governmental officials." *Id.*

**4.** *Fuller,* 75 P.3d at 1061.

**5.** *Id.*

**6.** *Id.*

**7.** *Id.* at 1065.

those it had previously produced. Fuller moved to compel production.

The superior court granted summary judgment to the city and dismissed Fuller's complaint. The city contends in its brief that after judgment was entered, Fuller paid the $354.59 and was granted access to the documents. Fuller does not dispute this contention.

Fuller appeals. She contends that the superior court erred in (1) "determining that as a matter of law, the City of Homer was entitled to charge a privilege review fee"; (2) "determining that there was no genuine issue of material fact relating to the time spent and the amount charged for the City of Homer's privilege review"; and (3) "denying [her] motion to compel production."

## III. DISCUSSION

### A. Standard of Review

■ We independently review the grant or denial of a motion for summary judgment.[8] In reviewing a grant of summary judgment, we " 'must draw all reasonable inferences in favor of the nonmoving party and may [uphold] summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.' "[9]

■ "Courts typically review discovery orders under the abuse of discretion standard."[10] We review an interpretation of the Civil Rules under the independent judgment standard.[11]

■ We review findings of fact under the clearly erroneous standard.[12] A finding is clearly erroneous if a review of the entire record leaves the court with a "definite and firm conviction that a mistake has been made."[13] In reviewing factual findings, we view the evidence in the light most favorable to the prevailing party below.[14]

### B. The City Was Not Authorized To Charge Fuller for Its Privilege Review of City Records.

■ The superior court required Fuller to pay for the time Drathman spent reviewing the files she requested, including the time he spent reviewing the records for privileged documents. Although she implies that public records should generally be available without charge, Fuller's main contention is that the city may not charge for a privilege review of public documents. We hold that Homer could appropriately charge for the ministerial aspects of record production but that the city was not entitled to charge for the time Drathman spent conducting the privilege review. We turn first to the relevant state statute and city code provisions and regulations.

#### 1. The state statute, city code provisions, and city regulations

We must first consider what provisions of law control. Fuller seems to contend that the Homer City Code (HCC) sections dealing with access to city documents, particularly HCC 01.80.010 and HCC 01.80.050(a), are inconsistent with the city regulations, Homer Regulation (HR) 01.03 and HR 01.05, that actually impose the fees. The city responds that the fee requirements in its regulations are consistent with its code and the relevant state statute, AS 40.25.110.

Alaska Statute 40.25.110 governs access to public records and provides for payment of fees for searching for and copying public

**8.** *Froines v. Valdez Fisheries Dev. Ass'n, Inc.,* 75 P.3d 83, 86 (Alaska 2003).

**9.** *Waage v. Cutter Biological Div. of Miles Labs., Inc.,* 926 P.2d 1145, 1148 n. 4 (Alaska 1996) (quoting *Russell v. Municipality of Anchorage,* 743 P.2d 372, 375–76 n. 11 (Alaska 1987)).

**10.** *Municipality of Anchorage v. Anchorage Daily News,* 794 P.2d 584, 594 n. 19 (Alaska 1990).

**11.** *Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 273 (Alaska 2001).

**12.** *Peterson v. Ek,* 93 P.3d 458, 463 (Alaska 2004).

**13.** *Id.* (quoting *Demoski v. New,* 737 P.2d 780, 784 (Alaska 1987)).

**14.** *Voss v. Brooks,* 907 P.2d 465, 467 (Alaska 1995) (citing *Klosterman v. Hickel Inv. Co.,* 821 P.2d 118, 122 (Alaska 1991)).

records in response to a request.[15] We have held that it applies to municipalities.[16] This statute does not expressly or impliedly prevent the city from charging a fee for searching for and copying public documents in response to a document request.

Homer City Code 01.80.010 (1995) describes the city's general approach to requests for public records:

> It is the intention of the City to provide full and free access of the public to municipal records and information so that the people of the City may be well informed at all times as to municipal business. With the exception of the specific exemptions set forth under Section 1.80.040, all information and records in the control of the municipality shall be made available to the public upon request.

Homer City Code 01.80.050 (1995) authorizes the city manager to adopt regulations that impose "a fee" for inspecting public records:

> The City Manager shall adopt regulations as to the time, place, and manner of inspection of public records held by the municipality. Such regulations may also provide: a. That a fee may be required. The fee shall not exceed the actual cost to the agency. No fee shall be charged when a person simply requests access to the information. In the event the person is unable to pay any requested fee, and signs an affidavit to the effect that he or she is indigent, there will be no cost to the above described person.

In a seeming exercise of that authorization, the city promulgated regulations requiring a requester to pay a "search fee." Homer Regulation 01.03 (2003) discusses payment of "search" fees for time spent searching for and copying records:

> If the production of records for one requestor in a calendar month exceeds five-person hours [sic], the requestor must pay a search fee. The fee for city staff to search the city's records will be the employee's actual salary plus benefit costs for the time to search and copy the records. The search fee will be in addition to the standard copying fee.

Homer Regulation 01.05 (2003) also discusses imposition of "search" fees for production of records for inspection:

> There will be no copying fee for simple inspection of records, except when the production of the records for inspection by one requestor in a calendar month exceeds five person-hours. In that case the requestor will be required to pay the search fee as described in the preceding paragraphs.

Alaska Statute 40.25.110 and HR 01.03 and 01.05 thus allow the city to require a records requester to pay fees when the production time for a response exceeds five hours a month. Drathman's total time exceeded five hours; therefore, per AS 40.25.110 and HR 01.03 and 01.05, the city was potentially entitled to charge Fuller a search fee.[17]

**15.** AS 40.25.110 provides in part:
(a) Unless specifically provided otherwise, the public records of all public agencies are open to inspection by the public under reasonable rules during regular office hours. The public officer having the custody of public records shall give on request and payment of the fee established under this section or AS 40.25.115 a certified copy of the public record.
(b) Except as otherwise provided in this section, the fee for copying public records may not exceed the standard unit cost of duplication established by the public agency.
(c) If the production of records for one requester in a calendar month exceeds five person-hours, the public agency shall require the requester to pay the personnel costs required during the month to complete the search and copying tasks. The personnel costs may not exceed the actual salary and benefit costs for the personnel time required to perform the search and copying tasks. The requester shall pay the fee before the records are disclosed, and the public agency may require payment in advance of the search.
(d) A public agency may reduce or waive a fee when the public agency determines that the reduction or waiver is in the public interest. Fee reductions and waivers shall be uniformly applied among persons who are similarly situated. A public agency may waive a fee of $5 or less if the fee is less than the cost to the public agency to arrange for payment. . . .

**16.** *Anchorage Daily News,* 794 P.2d at 589.

**17.** No party asserts that the regulations promulgated in 2003 do not apply to the dispute now on appeal.

Fuller does not seriously contend here that the city had no authority to assess some fee for producing the documents she requested. But she points to HCC 01.80.010, which states that "[i]t is the intention of the City to provide full and free access of the public to municipal records and information. . . ." Fuller also cites HCC 01.80.050(a)'s statement that "[n]o fee shall be charged when a person simply requests access to the information." She therefore cursorily implies that these provisions required the city to make the documents available without charge.

Fuller argues that HR 01.05 is inconsistent with HCC 01.80.050(a) and that HR 01.05 renders superfluous HCC 01.80.050(a)'s phrase "[n]o fee shall be charged when a person simply requests access to the information." She argues that to give meaning to each sentence, the "[n]o fee shall be charged" language in HCC 01.80.050(a) should be applied to situations in which a fee otherwise would have been charged, i.e., instances in which more than five hours were spent searching for requested records.

The city contends that its regulations are a reasonable result of reconciling the city code with mandatory state law. The city argues that reading HCC 01.80.050(a) to require free production of documents requiring more than five hours to produce would conflict with, and be preempted by, AS 40.25.110(c). It contends that just as the "full" access discussed in HCC 01.80.050 is subject to the numerous exceptions listed in HCC 01.80.040 and 01.80.060(a), both of which discuss documents that need not be disclosed, "free" access is subject to a reasonable fee not to exceed the city's cost.

As the issues are presented to us here, there is no conflict between the statute, the city code, and the city's regulations. The statute authorizes imposition of a fee for searching for and copying records, the code authorizes adoption of regulations charging a fee, and the regulations impose a "search fee." The tasks for which the regulation imposes a fee—searching for and copying requested records—are the same tasks the statute describes.[18] The regulations' five person-hour threshold is consistent with the statute's threshold.[19]

We therefore reject any contention that HCC 01.80.010 and HCC 01.80.050(a) altogether precluded the city from assessing any fee here. HCC 01.80.050(a) deals with "access to . . . information," while HR 01.03 and 01.05 deal with producing records. Fuller did not simply seek access to records in city files readily available for inspection at city offices. Her request included specified records that she recognized were at a storage facility. Therefore HCC 01.80.010 and 01.80.050(a) cannot reasonably be read to foreclose a fee for time spent producing records in response to Fuller's request.

There is a practical difference between accessing information and asking a public employee to find and gather records for inspection; the former might mean viewing on one's own time documents readily retrievable at city hall, and the latter might entail requiring city employees to search for and gather particular documents. The first task potentially costs the city much less than the second because less staff time is needed for the former. This differentiates between the activities addressed by HCC 01.80.050(a) and the activities addressed by HR 01.03 and 01.05.

Finally, it could heavily burden a political subdivision to be required to comply with every search request, no matter how onerous, without charging some fee. We therefore conclude that HR 01.03 and 01.05 permissibly interpret HCC 01.80.050(a) and that HCC 01.80.050(a) does not conflict with AS 40.25.110.

Fuller also observes that we have held that there is a presumption in favor of public access to records and that exceptions should be narrowly construed.[20] She contends that it therefore follows that provisions of law allowing access to public documents without payment of fees should be broadly construed

---

**18.** *Compare* HR 01.03 *with* AS 40.25.110(c).

**19.** *Compare* HR 01.03 and 01.05 *with* AS 40.25.110(c).

**20.** *See, e.g., Fuller v. City of Homer,* 75 P.3d 1059, 1061–62 (Alaska 2003).

in favor of free or inexpensive access to public records.

The city argues that per AS 40.25.110(c), it correctly charged Fuller for the time Drathman spent reviewing the documents; state policy did not require the city to provide unlimited documents free of charge. It asserts that by promulgating HR 01.03 and 01.05, the city has interpreted HCC 01.80.050(a) to waive a fee only when the request is "to look at documents that are readily available to public access, and which require neither a time-consuming effort to produce nor copying." Therefore, the city argues that its regulations are a reasonable interpretation of HCC 01.80.050(a) and conform with the requirements of AS 40.25.110(c).

■■■ We agree with Fuller that there is a strong commitment in Alaska "to ensuring broad public access to government records."[21] There is a presumption in favor of disclosure of public documents.[22] But this presumption does not resolve the questions before us here. By statute, reasonable fees are appropriate when the search and copying time in one month exceeds five hours per requester.[23] Fuller does not claim that the statute is invalid. The city is not attempting here to withhold documents from Fuller; it seeks to have Fuller pay the costs it incurred in carrying out the search she requested.

In short, any contention that the city could not charge any fee for producing the records Fuller requested is inconsistent with AS 40.25.110, HR 01.03, and HR 01.05, all of which allow the city to assess fees. We therefore conclude that the city was not obliged to produce these records for free.

### 2. Privilege review

Fuller argues that a "search" fee imposable for access to information should be for time spent searching for records, not reviewing retrieved records for privilege. She argues that there is no indication the State of Alaska interprets 6 Alaska Administrative Code (AAC) 96.360(b) (2003) or AS 40.25.110 to allow fees for time spent reviewing documents for privilege.

The city responds that reviewing records for disclosability is part of a search. It reasons that the terminology of AS 40.25.110(c)—which speaks of "production" rather than "copying" or "duplication" and refers to "search and copying tasks"—implies that "searching" is broader than "copying." The city argues that an agency is required by law to remove privileged materials before production,[24] and that the removal of confidential information should not be treated as an activity separate from the search. The city contends that cases elsewhere are not helpful because their outcome depends on the underlying statute, and each state's statutes differ.

We agree with the city that case law from other jurisdictions is not particularly helpful. Determining whether the holder of information may charge for a privilege review depends largely on the applicable statute or regulation.[25] We therefore rely on our interpretation of the pertinent statute and city regulations.

"Production" is defined as "the act or process of producing, bringing forth, or making[,] ... the act of exhibiting."[26] As used in AS 40.25.110 and HR 01.03 and 01.05, "production" does not seem to include anything other than routine ministerial efforts in looking for and making available the requested documents. The statute repeatedly uses the phrase "search and copying tasks." Read literally, these words refer to the pro-

21. *Id.* at 1061; *Jones v. Jennings,* 788 P.2d 732, 735 (Alaska 1990).

22. *Fuller,* 75 P.3d at 1061–62; *Municipality of Anchorage v. Anchorage Daily News,* 794 P.2d 584, 589 (Alaska 1990).

23. AS 40.25.110(c).

24. *See, e.g.,* 6 AAC 96.330(a).

25. *See, e.g., Demers v. City of Minneapolis,* 468 N.W.2d 71, 75 (Minn.1991) (stating holder of information may not charge for photocopies made simply to separate public from not public data, because statute stated that responsible authority "may not charge for separating public from not public data").

26. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1810 (1961).

cesses of looking for [27] and duplicating [28] requested documents. A "task" is "a specific piece or amount of work usu[ally] assigned by another and often required or expected to be finished within a certain time." [29] In the statute and regulations, "tasks" is plural. This suggests that searching and copying are distinct and different processes, and that the entire phrase is not meant to broadly encompass other processes. It also implies a clerical, ministerial function rather than an executive function implicating professional expertise and judgment. This suggests that "production" is essentially administrative and clerical. It also suggests that a privilege review is not "production" because it is not part of the "search" task or the "copying" task. A privilege review is not an inherent or necessary part of a document "search." Indeed, a privilege review would seem conceptually to require that the search already have been conducted and the requested documents identified.[30] Likewise, because it seems likely only unprivileged documents would be copied and produced, a privilege review is not inherently part of the copying task.

Homer Regulation 01.03 similarly discusses "search[ing] and copy[ing] the records." The references to "copying fee for simple inspection of records" and "production of the records" in HR 01.05 imply that this regulation covers copying, and does not cover deciding whether documents are privileged.

We therefore conclude that "production" in AS 40.25.110 and HR 01.03 and 01.05 does not include a privilege review, contrary to the ruling of the superior court. Privilege review time consequently cannot be charged to Fuller.

The effect of this error is not clear. The city did not reveal exactly how much time Drathman spent conducting his privilege review, although it claimed that he spent 7.25 hours responding to Fuller's request. If there were some reason to think the privilege review took very little time, perhaps it could be said that the prejudice was de minimis. But the city raises no such contention. Moreover, the five-hour thresholds in the applicable statute and regulations make the time spent on the privilege review particularly relevant. If Drathman spent at least 2.25 hours conducting the privilege review, the actual production time must not have exceeded five hours. If the production time did not exceed five hours in one month, no fees could have been imposed on Fuller. We therefore remand to the superior court the issue of how much time Drathman spent on the privilege review.

The city also argues that it is relevant that Drathman conducted his review before we issued our decision in *Fuller*. But because the regulation did not authorize the city to charge Fuller for the privilege review, it is not relevant when he conducted that review.

## C. The Superior Court Did Not Abuse Its Discretion in Failing To Grant Fuller's Motion To Compel Discovery.

After Fuller commenced the present litigation by asking the superior court for declaratory and injunctive relief, Fuller served the city with a request for production for discovery of the documents she had sought in her request of October 11, as amended by her November 6 letter. The city objected to the request for production. Fuller moved to compel production, but the superior court did not grant her motion.

Fuller argues that her request for production sought "documents that were at the heart of the dispute over the privilege review fee." She asserts that her request was "calculated to lead to admissible evidence regarding whether the privilege review ... could have been completed in five hours or

---

**27.** To "search" is "to look into or over carefully or thoroughly in an effort to find or discover[,] ... to peruse thoroughly and usu[ally] with a particular objective." *Id.* at 2048.

**28.** To "copy" is to "duplicate, reproduce, transcribe." *Id.* at 501.

**29.** *Id.* at 2342.

**30.** *Cf.* AS 40.25.110.

less."[31] She contends that reviewing the records to determine whether Drathman had spent too much time reviewing the documents would have been "a relevant exercise." She contends that obtaining the records was necessary for this determination.

Alaska Civil Rule 26(b)(1) permits parties to

> obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

But here the object of discovery and the goal of Fuller's lawsuit were the same. Two federal cases have dealt directly with this issue.[32] In *Local 3, International Brotherhood of Electrical Workers v. National Labor Relations Board,* the plaintiff brought suit to compel disclosure of intra-agency memoranda and a list of employees' names and addresses.[33] During discovery the plaintiff requested various documents, but the trial court denied this motion to compel.[34] The Second Circuit upheld this ruling, stating that "[d]iscovery here would essentially grant Local 3 the substantive relief it requests: disclosure of documents that the NLRB claims are exempt. Thus, Local 3 is not entitled to discovery of documents claimed to be exempt."[35] The plaintiff in *Giza v. Secretary of Health, Education and Welfare* brought an action to compel the appearance of an expert, Dr. Finkel, to give deposition testimony for use in a state law-

suit.[36] On appeal the First Circuit stated that "[w]e also agree with the district court that the attempt to depose Dr. Finkel was improper discovery because securing her testimony was an object of the Gizas' suit."[37]

We similarly conclude that the superior court did not err in denying Fuller's motion to compel discovery.

### D. Fuller's Other Arguments

Fuller advances various arguments challenging the amount of time Drathman spent conducting his review. She contends that it is undisputed that in mid-November Drathman reviewed all of the file boxes responsive to her October 11 request even though she had narrowed her request on November 6. She contends that the facts permit an inference that if Drathman had limited his review to the files specified in her November 6 request, "it is quite likely the five hour 'free' search time would not have been exceeded." Relatedly, she argues that after the city denied her October request as too broad, Drathman reviewed the documents she requested in October despite her more specific November request, "creat[ing] an inference that the review was not undertaken as efficiently as possible in good faith." She also asserts that the city's past poor treatment of her permits an inference that Drathman did not act with reasonable efficiency. Finally, she argues that Drathman failed to follow the city regulation that requires payment of estimated charges before the search is undertaken. Had he done so, she contends, she might have discovered that he intended to review the boxes she originally requested, even though she later narrowed her request.

However, only if there were good reason to think that the city was intentionally inefficient in retaining or producing the disputed documents would the superior court have

**31.** *See, e.g., Carstens v. Carstens,* 867 P.2d 805, 809 (Alaska 1994).

**32.** *Local 3, Int'l Bhd. of Elec. Workers v. NLRB,* 845 F.2d 1177 (2d Cir.1988); *Giza v. Sec'y of Health, Educ. & Welfare,* 628 F.2d 748 (1st Cir. 1980).

**33.** *Local 3,* 845 F.2d at 1178.

**34.** *Id.* at 1179.

**35.** *Id.*

**36.** *Giza,* 628 F.2d at 749.

**37.** *Id.* at 751 n. 6.

been compelled to reduce the time spent in production. For the same reason, we need not discuss Fuller's argument that the city did not comply with HCC 02.08.010(f), which states that whenever possible only one copy of documents shall be retained, and with HCC 02.08.010(j), which, she argues, anticipatès that restricted or confidential documents will be segregated from other stored documents. And of course Fuller is not responsible for the privilege review time, whether it was spent efficiently or not.

Fuller also contends that no records of Drathman's time were preserved and that no witness could verify his review because it occurred on a weekend. Lack of independent verification does not mean that appropriate production costs should not be recovered. It is for a fact finder to decide whether the amount charged was incurred appropriately. The lack of independent corroboration does not justify reversal here.

Having concluded above that the city could not recover privilege review costs from Fuller, it is unnecessary for us to consider Fuller's arguments challenging the time or cost of the privilege review. We therefore also do not need to consider whether Drathman had expertise in reviewing documents for privilege. We likewise need not consider Fuller's argument that the city's actions

> indicate a pattern of behavior that easily allows an inference to be drawn that the city manager would do whatever he could to hinder access to public records by annexation opponents including making sure a privilege review was conducted at a leisurely pace so as to exceed the "five free hours" standard.[38]

## IV.  CONCLUSION

For these reasons, we REVERSE the grant of summary judgment and REMAND for a determination of how much time Drathman spent conducting the privilege review. If he spent any part of the 7.25 hours on a privilege review, the city must repay some or

all of the fees it charged and collected from Fuller.

---

**38.** Fuller does not contend on appeal that the hourly rate for Drathman's time was excessive or that search and copying tasks should have been billed at rates more likely to approach the cost of clerical employees.