NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| REGINA MANTEUFEL, | ) | |
| | ) | Supreme Court No. S-14668 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-06335 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| OFFICER MATTHEW TARBOX and | ) | AND JUDGMENT* |
| SERGEANT TED R. SMITH, as | ) | |
| individuals, ANCHORAGE POLICE | ) | No. 1469 - December 11, 2013 |
| DEPARTMENT, and MUNICIPALITY | ) | |
| OF ANCHORAGE, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: Regina Manteufel, pro se, Anchorage, Appellant. Pamela D. Weiss, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I. INTRODUCTION

A police officer stopped a driver and asked for identification. After the driver refused to comply a brief altercation ensued — the officer grabbed the driver's

---

\*    Entered under Alaska Appellate Rule 214.

wrist, allegedly hurting the driver. At the driver's request, a second officer was called to the scene — he examined the driver's wrist, also allegedly hurting the driver. The driver later brought suit claiming excessive force; the superior court granted summary judgment dismissing the suit based on qualified immunity and then awarded attorney's fees against the driver. The driver appeals. We affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

In April 2008 Regina Manteufel was driving to a bank when she passed Anchorage Police Officer Matthew Tarbox while he was conducting a traffic stop. Officer Tarbox was standing outside his vehicle and Manteufel sounded her horn briefly to alert him to her presence, as she believed was required by law. Manteufel then parked at the bank and exited her vehicle. Officer Tarbox approached her, asked why she had honked at him, and requested her identification. Manteufel refused Officer Tarbox's request for identification, saying that she needed to get into the bank before it closed. Manteufel then reached into her coat without telling Officer Tarbox what she was doing. Officer Tarbox grabbed her hand, allegedly pushing her thumb back and causing her pain in the process. Mantuefel complained that Officer Tarbox was hurting her and explained that she was reaching for her wallet inside her coat; he then released her hand.

When Officer Tarbox took Manteufel's identification to his vehicle, she called 911 to report the incident. Manteufel told the dispatcher that she had been hurt by a police officer and needed help. Officer Tarbox returned to Manteufel's vehicle, noted it had tinted windows, and investigated in accordance with Anchorage traffic codes. After asking about the window tinting, Officer Tarbox allowed Manteufel to go into the bank.

As Manteufel came out of the bank, Anchorage Police Sgt. Ted Smith arrived. Manteufel explained to Sgt. Smith what had happened, and he asked to inspect

her hand. Manteufel claims that when assessing her injury, Sgt. Smith "shove[d] his fingers into [her] hand and . . . into [her] tendons in [her] wrist . . . with a . . . lot of force and pressure," causing her more pain.

### B. Proceedings

In April 2010 Manteufel, acting pro se, brought suit against Officer Tarbox and Sgt. Smith for excessive force, and against the Anchorage Police Department and the Municipality of Anchorage under respondeat superior. The superior court attempted to guide Manteufel through the process. The court explained directing discovery requests to the opposing party rather than to the court, obtaining criminal records online, and certain basic aspects of civil procedure. The court granted Manteufel extra time to depose lay witnesses and delayed trial to give her additional time to conduct discovery and submit pre-trial papers. The court also repeatedly encouraged Manteufel to obtain counsel to evaluate her chances of success in light of the risk of adverse judgment attorney's fees.

In August 2011 the officers moved for summary judgment. After being granted an extension of time to conduct additional discovery and respond, Manteufel opposed the motion. The superior court granted summary judgment for the officers on the basis of qualified immunity. The officers then moved for attorney's fees. Manteufel did not file a timely opposition, and the court granted the motion for attorney's fees. Manteufel filed an opposition the next day, but the court did not respond.

Manteufel now appeals the summary judgment decision and the award of attorney's fees.

### III. STANDARD OF REVIEW

"We review [a] grant of summary judgment de novo, reading the record in the light most favorable to the non-moving party and making all reasonable inferences in

its favor."[1] "The applicability of both state and federal immunity are questions of law that are . . . subject to de novo review."[2] "Under the de novo standard of review, we will 'apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[3]

"We review a trial court's decision whether to provide guidance to a pro se litigant for abuse of discretion."[4] Decisions whether to issue a protective order also are reviewed for abuse of discretion.[5] We also generally review awards of attorney's fees for abuse of discretion.[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Its Treatment Of Manteufel As A Pro Se Litigant.

Manteufel argues that the superior court did not provide her, as a pro se litigant, with fair notice of the summary judgment rule requirements, including the option of filing an affidavit to oppose summary judgment. The officers respond that Manteufel

---

[1]    *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 801 (Alaska 2011) (quoting *Schug v. Moore*, 233 P.3d 1114, 1116 (Alaska 2010)) (alteration in original).

[2]    *Id.* at 802 (quoting *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008)) (alteration omitted).

[3]    *Id.* (quoting *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)).

[4]    *Farmer v. State, Dep't of Law, Office of Atty. Gen.*, 235 P.3d 1012, 1014 (Alaska 2010) (citing *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005)).

[5]    *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006) (citing *Fuller v. City of Homer*, 113 P.3d 659, 662 (Alaska 2005)).

[6]    *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010) (citing *Marsingill v. O'Malley*, 128 P.3d 151, 156 (Alaska 2006)).

was aware of and followed the correct procedures and her opposition to summary judgment simply failed on the merits.

Superior courts "should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish" including "the necessity of submitting affidavits to preclude summary judgment."[7] Manteufel was aware of the proper procedure for filing an opposition to summary judgment and she filed an opposition supported by affidavits. Manteufel's claim was denied based on the merits of the motion for summary judgment and Manteufel's opposition, not on her lack of procedural knowledge. The superior court did not abuse its discretion in its treatment of Manteufel as a pro se litigant.

**B.      The Superior Court Did Not Err By Granting Summary Judgment When Key Depositions Had Not Been Taken.**

Manteufel argues that the superior court erred by granting summary judgment before she had deposed Officer Tarbox or Sgt. Smith. But the time for discovery had elapsed before Manteufel attempted to depose the officers, and Manteufel did not request additional time under Alaska Civil Rule 56(f) to conduct discovery or take depositions. It therefore was not error to grant summary judgment without these depositions having been taken.

Manteufel's summary judgment opposition argued in part that the officers "refused to show for their depositions." But even if we were to construe that argument as a constructive motion for a continuance of the summary judgment proceedings,[8]

---

[7]      *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (alteration omitted).

[8]      "This court does not require that a party specifically identify Rule 56(f) when seeking a continuance; rather, a party need only provide 'adequate reasons explaining why the party cannot produce facts necessary to oppose summary judgment within the original time frame.' " *Parson v. Marathon Oil Co.*, 960 P.2d 615, 619

(continued...)

Manteufel would not have been entitled to relief under Rule 56(f) due to her conduct during the discovery process.[9]

Manteufel repeatedly delayed or failed to respond to interrogatories, requests for production, and requests for admission. The court extended the initial deposition deadline by three months at the Municipality's request, but Manteufel made no meaningful effort to take depositions. At the pre-trial conference the superior court acknowledged that an attorney would be precluded from conducting additional discovery in such circumstances, but because Manteufel had not yet had deposition subpoenas issued, the court extended Manteufel's deadline by another three weeks due to her pro se status.

Manteufel did not contact the officers' attorney about scheduling depositions until a week after the pre-trial conference. The parties tentatively agreed to a deposition date for Officer Tarbox and Sgt. Smith. Manteufel then delivered deposition subpoenas for different dates than had been agreed upon. The officers' attorney contacted Manteufel and explained that the officers were unlikely to be available on the new dates on such short notice. Manteufel stated that if the attorney could find other times for the depositions, she would reschedule. The officers' attorney then spent time contacting the officers, coordinating schedules, and arranging new deposition dates. Manteufel agreed

---

[8]    (...continued)
(Alaska 1998) ) (quoting *Gamble v. Northstore P'ship*, 907 P.2d 477, 485-86 (Alaska 1995) (holding plaintiff's motion to compel depositions and extend deadline for summary judgment motions based on defendant's delay constituted a request for relief under Rule 56(f)).

[9]    *See Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1259 (Alaska 2001) (citing *Demmert v. Kootznoowoo, Inc.*, 960 P.2d 606, 612 (Alaska 1998)) (holding superior court may deny an extension under Rule 56(f) if movant has been dilatory in conducting discovery).

to these dates. But Manteufel then stated her intention to proceed with her original schedule, despite the fact that neither officer was available. As a result, Manteufel failed to take depositions of these important parties before the close of discovery.

Pro se litigants are "expected to make a good faith attempt to comply with judicial procedures and to acquire general familiarity with and attempt to comply with the rules of procedure — absent this effort, [they] may be denied the leniency otherwise afforded pro se litigants."[10] Because Manteufel did not demonstrate a good faith attempt to respond to discovery requests or otherwise comply with the requirements of the discovery process, she is not protected by her pro se status from the effects of her dilatory discovery. The superior court did not err by granting summary judgment when depositions had not been taken.

### C. The Superior Court Did Not Err By Granting Summary Judgment After Denying Manteufel's Discovery Requests.

Manteufel argues that the superior court erred by denying her motions for discovery requests. Although Manteufel does not specify what evidence she wished to present, she opposed summary judgment based in part on her inability to obtain records pertaining to an internal affairs investigation of the incident.[11]

During discovery the officers disclosed the existence of the internal affairs records and proposed a stipulated protective order giving Manteufel limited access to the documents. Manteufel did not sign the stipulation or make a counterproposal. The court

---

[10] *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002) (citations omitted).

[11] Manteufel also opposed summary judgment based on her inability to access records of her 911 call. But the record shows that the Municipality located and provided Manteufel a copy of the 911 call record. Manteufel was merely unable to get the police records directly from the Anchorage Police Department Emergency Communications Center due to her involvement in litigation.

denied Manteufel's further requests for production of that evidence until she signed the protective order stipulation.

Protective orders are allowed under Alaska Civil Rule 26(c) when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Superior court judges have broad discretion to craft protective orders and protective orders "will not be overruled absent abuse of discretion."[12] Here it was not an abuse of discretion to require a protective order for the internal affairs records. The protective order required that Manteufel not copy, reproduce, retain, or disclose the documents, but allowed her to show them to an attorney if she retained one for the case; the order also required Manteufel to make a motion if she wanted to use the evidence at trial and to return all documents at the close of the litigation. Manteufel does not explain why she believes the protective order was unreasonable, and we believe it struck a reasonable balance between Manteufel's interest in accessing relevant records and the Municipality's interest in avoiding dissemination of sensitive internal documents.[13] We conclude that the superior court did not abuse its discretion by issuing a protective order for this sensitive information.

### D. The Superior Court Did Not Err By Granting Summary Judgment On The Basis Of Qualified Immunity.

Manteufel asserts that her case was dismissed on summary judgment because she was "not prepared or willing to proceed with trial." But the superior court did not grant summary judgment to the officers because of a procedural deficiency on

---

[12]     *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006) (citing *Fuller v. City of Homer*, 113 P.3d 659, 662 (Alaska 2005); *Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990)).

[13]     *See id.* at 677 (upholding protective order striking reasonable balance between right to discovery and right to protection from unduly intrusive discovery).

Manteufel's part — it granted summary judgment because the officers were entitled to qualified immunity for their actions. The superior court ruled that Officer Tarbox used reasonable force in grabbing Manteufel's hand because she initially failed to comply with the request for identification and she could have been reaching into her coat "to grab a weapon or endanger the officer." The court ruled that Sgt. Smith also used reasonable force in examining Manteufel's hand to assess her injury. To the extent Manteufel's brief may be read to challenge the merits of this determination, the grant of summary judgment is upheld.

"In Alaska, questions concerning qualified immunity for claims of excessive force are governed both by the Fourth Amendment and by state statute."[14] "Qualified immunity is intended to protect 'all but the plainly incompetent or those who knowingly violate the law.' "[15] "[A]n officer is entitled to qualified immunity if the officer's conduct was an objectively reasonable use of force or the officer reasonably believed that the conduct was lawful."[16] In analyzing the objective reasonableness of the officers' actions, we "focus on the *officers'* perspectives and perceptions, as it is what reasonable officers

---

[14] *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (footnotes omitted); *see also* AS 11.81.370, AS 12.25.070 (explaining the amount of force an officer is authorized to use).

[15] *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[16] *Id.* at 803 (citing *Sheldon v. City of Ambler*, 178 P.3d 459, 463-64 (Alaska 2008)); *see also Olson*, 251 P.3d at 1032 (citing *Sheldon*, 178 P.3d at 463) (stating that "a police officer in Alaska is entitled to qualified immunity in an excessive force case if the officer's conduct was objectively reasonable or the officer reasonably believed that the conduct was lawful, even if it was not").

*in their position* could have thought that is dispositive of this issue."[17] And we also have recognized that "officers must often make quick judgments which might have unanticipated consequences, [and] we must resist the urge to second guess those actions when things turn out badly."[18]

Officer Tarbox grabbed Manteufel's hand to prevent her from reaching into her coat after she initially failed to comply with his request for identification. Manteufel produced no evidence that Officer Tarbox prevented her from reaching into her coat for any reason other than a security concern about the possible possession of a weapon. His use of force to restrain her was therefore justified.[19] Sgt. Smith arrived at the scene in response to Manteufel's complaint of an injury; Manteufel produced no evidence that Sgt. Smith's examination of her hand went beyond what he reasonably thought necessary to assess her injury complaint. Examining Manteufel's hand therefore was not unreasonable in the context of qualified immunity for alleged excessive force.

Although the officers' actions may have caused Manteufel pain, in excessive force cases we focus on the officer's actions, not their result. In *Sheldon v. City of Ambler*, we held an officer was entitled to qualified immunity for tackling a suspect in the

---

[17]     *Samaniego v. City of Kodiak*, 2 P.3d 78, 80 (Alaska 2000) *overruled in part by Sheldon*, 178 P.3d 459 (modifying *Samaniego*'s qualified immunity standard to add subjective reasonableness prong) (emphasis in original).

[18]     *Sheldon*, 178 P.3d at 467 (citing *Samaniego*, 2 P.3d at 88).

[19]     *See* AS 11.81.370(a)(3) (stating officers "may use nondeadly force and threaten to use deadly force" when they reasonably believe that a person may "endanger life or inflict serious physical injury unless arrested without delay").

course of an arrest resulting in the suspect's death because even though "the series of events in this case resulted in tragedy," that did not make the force excessive.[20]

We therefore affirm the superior court's grant of summary judgment on Manteufel's excessive force claims on the basis of qualified immunity.

**E.     The Superior Court Did Not Err By Awarding Attorney's Fees Against Manteufel.**

After the grant of summary judgment, the officers moved for attorney's fees. The superior court granted the motion. Manteufel filed an opposition the next day, claiming primarily that the cases cited in the officers' summary judgment motion were unciteable. The court did not respond.

The officers assert that by failing to oppose the attorney's fees motion before the superior court ruled on it, Manteufel waived her right to contest the award. We do not need to address the officers' procedural defense because we conclude, on the merits and considering Manteufel's late-filed opposition, that the superior court did not abuse its discretion in awarding attorney's fees.

The officers prevailed in their defense of the lawsuit. Manteufel's opposition to the motion for an award of attorney's fees rested on her argument that several of the cases cited in the officers' motion for summary judgment have yellow flags in the Westlaw database and are therefore unciteable. But the presence of a yellow flag in Westlaw means only that "the case or administrative decision has some negative history but hasn't been reversed or overruled."[21] More importantly, Manteufel's argument went to the merits of the already-decided summary judgment motion, not the attorney's

---

[20]     178 P.3d at 467.

[21]     *KeyCite Status Flags, Westlaw*, http://www2.westlaw.com/Customer Support/Knowledgebase/Technical/WestlawCreditCard/WebHelp/KeyCite_Status_Fl ags.htm (last visited Oct. 1, 2013).

fees motion.  Manteufel raised no objection to the merits of the attorney's fees motion. Nor does she do so on appeal.  We therefore affirm the superior court's attorney's fees award.

## V.  CONCLUSION

We AFFIRM the superior court's decisions.